B. T. HARRIS CORPORATION *v.* ARDE BULOVA

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued December 8, 1948—decided February 21, 1949

*J. Kenneth Bradley,* with whom was *Frederick L. Comley,* for the appellant (defendant).

*T. Ward Cleary,* for the appellee (plaintiff).

BROWN, J.  The plaintiff is engaged in the development and sale of a tract of land in Stamford which originally contained 160 acres.  It sold approximately 100 acres in parcels varying in size from 1 to 18 acres, upon which houses costing from $20,000 to $85,000 have been built.  On April 11, 1942, a tract of about ten acres was purchased by the defendant, who, as the plaintiff knew, intended to construct a private golf

course upon it; this he has done. In connection with the golf course the defendant has planted and is proposing to plant certain evergreen trees, and the plaintiff brought this action for injunctive relief, claiming that the defendant's acts violated restrictive covenants in his deed which were made expressly binding on him. Judgment was rendered for the plaintiff and the defendant has appealed.

The facts found which are material to the decisive issues before us are not disputed. One of the six restrictive covenants in the deed provided that "5. No hedge or fence of any kind having a height in excess of four and one-half feet, shall be maintained on said premises, except with the written approval of the grantor, or its successors," and another that "6. The location of shrubbery and planting, and laundry yard, shall also be approved by the grantor, or its successors." Immediately following was this provision: "Nothing herein contained is intended or shall be construed as prohibiting or preventing the grantee, his heirs and assigns, from constructing on said premises and maintaining thereon, a private golf course, and caddy house." The plaintiff's intent in inserting these two restrictions was to provide an unobstructed view for any parcel within the tract it had originally owned. The provision concerning the golf course was inserted upon the insistence of the defendant.

During 1942 the defendant cleared and graded the land and employed an expert who laid out on it a private golf course. The tract adjoins other land of the defendant which lies southwest of it, and it is bounded on the east by Briarwood Lane and on the south by remaining land of the plaintiff. A tee was located in the northeast corner of the tract and a green in the southeast corner, so that the fairway between extends along and parallel to Briarwood Lane. The

original layout of the golf course was completed in 1943. Subsequently the expert designed and added to the course a green and two tees. In the spring of 1945, seven feet inside the stone wall he had built around the property, the defendant planted a row of Scotch pine trees along a portion of the southern boundary and also along a part of the eastern boundary, and he dug holes preparatory to further planting along the rest of that boundary. On the east the fairway extends up to these trees. The tree trunks and the holes dug are spaced at intervals of about ten feet, and the trees now are from ten to eighteen feet in height. Their foliage, when a golf ball comes in contact with it, diminishes the ball's power. There is no standard length or design for a golf course, but in laying one out upon a ten-acre tract it is necessary to take into account the topography and area of the land.

The complaint as amended alleged that the defendant's conduct in doing this planting was "in violation of the restrictive covenants contained in the defendant's deeds." This the defendant denied. He also alleged as a special defense that the golf course provision quoted above and which we refer to below as the saving clause constituted a waiver of the restrictive provisions, and further that the planting was "a natural and necessary part of a golf course." This was denied by the plaintiff's reply. The court concluded that the defendant had violated restrictive covenants 5 and 6 in the deed. A number of paragraphs in the finding and much of counsels' argument are directed to the question whether these trees as planted constituted a "hedge" in violation of covenant 5. Since we concluded that the determination as to whether covenant 6 was breached is conclusive of the appeal, we confine our discussion to that issue.

It is undisputed that the defendant, in planting the

trees, located them where he did without the approval of the plaintiff. There can be no doubt that this was a planting within the terms of covenant 6. Disregarding for the moment the effect of the saving clause, which we consider below, when this covenant is read in connection with the other restrictive covenants which precede it a dominant intent to prohibit the placing or maintaining on the land conveyed of any structure or vegetation which would either appreciably interfere with the view from the other land originally owned by the plaintiff or would for other reason be objectionable with relation to it, without the grantor's approval, is evident. The first covenant in the deed is that the "premises shall be used for strictly private residential purposes only." The second specifies the type of house permissible, and the third restricts the right of subdivision. The fourth states that no "erection of any kind shall be erected or maintained . . . unless . . . the location of the same on said premises, shall have been approved in writing by the grantor." Then follow the fifth and sixth already quoted. Construed in its context, the only reasonable interpretation of covenant 6 is that it includes a prohibition against any planting of trees by the defendant on the premises without first obtaining the plaintiff's approval of the place where they are to be located. It follows that the planting in question, as the court concluded, violated the sixth covenant unless the saving clause renders it inapplicable.

The principle determinative of this question has been repeatedly stated by this court: "In construing the deed we are bound to consider the language and terms of the whole instrument in order to determine what was in the minds of the parties." *City National Bank* v. *Bridgeport,* 109 Conn. 529, 539, 147 A. 181. As was said in *Clanrickard* v. *Sidney,* Hobart 273, 275,

80 Eng. Rep. 418, "the reason is, the wisdom and the benignity of the law, that being to judge of an act, deed, or bargain, consisting of divers parts, containing the will and intent of the parties, all tending to one end, doth judge of the whole, and gives every part his office to make up that intent, and doth not break the words in pieces." *Lewis Oyster Co.* v. *West,* 93 Conn. 518, 523, 107 A. 138; *Loomis* v. *Heublein & Bro.,* 91 Conn. 146, 150, 99 A. 483, and cases cited. " 'The primary rule of interpretation of such [i. e. restrictive] covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement, but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met.' *Kitching* v. *Brown,* 180 N. Y. 414, 427, 73 N. E. 241." *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 295, 82 A. 561.

The saving clause that nothing should be construed to prevent the grantee from maintaining a private golf course on the premises must then be interpreted together with the restrictive covenants, as stated in the opinion just quoted. The first covenant, that the "premises shall be used for strictly private residential purposes only," when considered in connection with the sales previously made of small tracts aggregating about two-thirds of the entire property originally owned by the plaintiff, upon which tracts expensive homes had been built, and also with the further fact that all of the deeds of these tracts contained restrictive covenants similar to those here, makes clear that in permitting this golf course the plaintiff was making a concession to the defendant which was a radical departure from the primary purpose expressed in this and the other deeds of land in the development. This is a very important circumstance which the parties must

be presumed to have considered when their minds met. Turning to the deed itself, the only words definitive of the nature of the golf course are that it shall be private and may include a caddy house. As the court's unchallenged finding is that "the only requirements for a golf course are a tee, grounds and a hole," and as the defendant concedes that "trees are not essential to the existence of a golf course," it is apparent that the meaning of the saving clause is doubtful as to whether or not the golf course which the defendant was to be permitted to construct could include trees other than those which were already growing upon the property and which continued in the location where they were. Further undisputed facts relevant in resolving this ambiguity are that the planting complained of does obstruct and will increasingly obstruct the view to the west from the plaintiff's remaining land which was unobstructed before, showing that it is detrimental to the use for residential purposes of this property of the plaintiff.

Construing the saving clause in the light of all of the other provisions in the deed and of the surrounding circumstances, we conclude that the defendant's right under it is limited to the construction and maintenance of a private golf course which, in addition to the essential requisites above mentioned, may also include those attributes which are reasonably necessary to the completion of such a golf course, even though there would otherwise be a violation of the restrictions which existed. By reason of the facts in this case, this conclusion does no violence to the rule of interpretation that a restrictive covenant will not be extended by implication. *Hooker* v. *Alexander,* 129 Conn. 433, 436, 29 A. 2d 308. Under this conclusion, the defendant's right to maintain a golf course suitable for his purpose is assured and the plaintiff's right to a continued un-

obstructed view is not unnecessarily curtailed. While the trial court failed to express an ultimate conclusion definitive of the plaintiff's right in the precise language above stated, that this was the basis upon which it reached its decision sufficiently appears from the record. It concluded: The Scotch pine trees planted at ten-foot intervals "were not necessary to complete the design and layout of the defendant's private golf course"; by planting them the defendant had violated convenants 5 and 6; but if the trees were maintained at intervals of "not less than 25 feet, then the restrictions would not be violated." If these conclusions of themselves are insufficient to establish that the court applied the test of whether the trees as planted were reasonably necessary to the completion of this golf course, that the court did apply this test adequately appears from a statement in its memorandum of decision: "It is not necessary to have them [the trees] planted as close to each other as they are in order to define the course and to form a background tending to prevent overshooting a nearby green. If they were planted in a line sufficiently far apart to prevent them from forming a hedge they would still define the course, form a background which would tend to prevent one playing the course from over-shooting a nearby green, and they would give the course character and beautify it." The court's conclusions cannot be disturbed and they afford sufficient basis for its judgment enjoining the defendant against maintaining the trees at intervals of less than twenty-five feet.

There is no error.

In this opinion the other judges concurred except DICKENSON, J., who concurred in the result.