[No. 36910.    En Banc.    February 11, 1965.]

LeRoi Burton, *Respondent*, v. Douglas County, *Defendant*, Wenatchee Golf and Country Club, Inc., *Appellant.**

*Hughes & Jeffers* and *Engst & Phelps*, for appellant.

*Sperline & Kuntz*, for respondent.

OTT, J.—The Wenatchee Golf and Country Club was incorporated in 1923 as a nonprofit corporation. It developed and constructed a nine-hole golf course, clubhouse, caddy

*Reported in 399 P. (2d) 68.

house, and a blacktopped parking lot with a capacity for 100 automobiles. In 1930, certain real property in the immediate vicinity of the clubhouse and along a winding road designated as Country Club Drive was platted into blocks and lots, as indicated by the partial plat below.

Restrictive covenants were adopted by a document executed by the platters in 1953, and thereafter signed by all of the owners of the property here in question. Covenants Nos. 2 and 3, insofar as here material, provided:

"(2) No building shall be erected on any building plot except one detached single-family dwelling. . . .

"(3) No noxious or offensive or business trade shall be carried on upon said premises or permitted thereon; nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."

The deeds to all of the platted area contained the restrictive covenants.

Within the past 5 years, the country club added a second nine holes to the golf course on its unplatted area lying east of Country Club Drive and adjacent to the platted area.

In 1955 LeRoi Burton purchased lots 1 and 2 in block 2 adjacent to the clubhouse and the blacktopped parking facilities, and constructed a residence thereon. In 1957, the country club purchased lots 1 and 2 of block 3, and, in 1959, purchased lots 3, 4, and 5 of block 3, which are located adjacent to Country Club Drive and across the drive from the clubhouse. A part of lots 1 and 2 of block 3 was planted to grass and used as tees for the adjacent fairways. Lots 3, 4, and 5, although unimproved, had been used by the club members for parking purposes for a period in excess of 10 years. None of the property owners objected to these uses of the lots as being violative of the restrictive covenants, although the lots in block 1 are substantially developed and those in block 2 are fully developed with beautiful suburban homes.

The Wenatchee Golf and Country Club sought to level and blacktop lots 3, 4, and 5 of block 3 to improve the established use of the premises for parking approximately 35 automobiles. LeRoi Burton instituted this action to enjoin the improvement, contending that the proposed plan was violative of restrictive covenant No. 3.

The trial court, sitting without a jury, found that, although the proposed improvement of the parking lot was neither noxious nor offensive, nor an annoyance or nuisance to the neighborhood, nevertheless the golf club operation was a business, and the maintenance of the proposed parking lot, being an integral part of such business operation, was therefore a "business trade," in violation of restrictive covenant No. 3.

From the judgment enjoining the proposed improvement, the Wenatchee Golf and Country Club has appealed.

The appeal presents a single issue: Was the restriction upon carrying on a "noxious or offensive or business trade", intended to proscribe the maintenance of a parking lot in conjunction with the operation of the golf club?

There is substantial agreement among the various state courts that the following rules govern the interpretation of restrictive covenants:

(1) The primary objective is to determine the intent of

the parties to the agreement, and, in determining intent, clear and unambiguous language will be given its manifest meaning. *Gwinn v. Cleaver*, 56 Wn. (2d) 612, 354 P. (2d) 913 (1960); *Katsoff v. Lucertini*, 141 Conn. 74, 103 A. (2d) 812 (1954). (2) Restrictions, being in derogation of the common-law right to use land for all lawful purposes, will not be extended by implication to include any use not clearly expressed. Doubts must be resolved in favor of the free use of land. *Granger v. Boulls,* 21 Wn. (2d) 597, 152 P. (2d) 325 (1944); 155 A. L. R. 523; 14 Am. Jur. § 211, p. 620. (3) The instrument must be considered in its entirety, and surrounding circumstances are to be taken into consideration when the meaning is doubtful. *Gwin v. Cleaver, supra*; *B. T. Harris Corp. v. Bulova*, 135 Conn. 356, 64 A. (2d) 542 (1949); *Parrish v. Newbury*, 279 S. W. (2d) 229 (Ky. 1955).

Applying these rules to the restrictive covenants in question, the intent of the contracting parties becomes apparent. Although no structure other than a detached single-family dwelling was permitted, it was *not* intended that the land should be used for residential purposes only. Land may be used without a structure thereon, and here there is no express covenant prohibiting such use. *Granger v. Boulls, supra*. Had the intent been to restrict to residential use only, the parties could have so provided. *Weber v. Graner*, 137 Cal. App. (2d) 771, 291 P. (2d) 173 (1955). The fact that the parties designated "noxious or offensive or business trade" as the only prohibited nonresidential use is clear evidence of their intention that other nonresidential uses were permissible.

The word "business" in restrictive covenants is one of ambiguous and uncertain meaning. 14 Am. Jur. § 218, p. 623. The appellant is a social club, organized under appropriate statutes as a nonprofit corporation. The fact that it charges its members and guests for services and makes a profit on some of its activities does not change its essential character as a social organization. *State ex rel. Johnson v. Lally*, 59 Wn. (2d) 849, 370 P. (2d) 971 (1962). The commonly accepted meanings of the words "business" and "trade" do not include "social" organizations. As was said

in *Easterbrook v. Hebrew Ladies Orphan Soc.,* 85 Conn. 289, 299, 82 Atl. 561 (1912):

" . . . The word 'business' in its ordinary and common use among men, is employed to designate human efforts which have for their end living or reward. It is not commonly used as descriptive of charitable, religious, educational, or social agencies. Can it be imagined readily that any one of these parties would have referred to a charitable institution, or a church building or adjunct, or a free school, or a social club, as a business? We imagine not, and it is no less improbable that they employed that term in the instrument in question in the permissible broad sense of it which would include such activities."

▄▄ Respondent relies upon *Bennett v. Consolidated Realty Co.,* 226 Ky. 747, 11 S. W. (2d) 910 (1928). In the cited case, the court held that a parking lot, operated in conjunction with a roadhouse open to the public, was a business use and violative of a covenant which provided: " 'No trade or business whatever shall be permitted or maintained on this property. . . .' " The platted area was not dependent upon the roadhouse as its promotional adjunct, and it was not the intention of the platters, in platting the addition, to further the successful operation of the roadhouse. In the instant case, the residential development was dependent upon the successful operation of the country club, and the restrictive covenants were not intended to deter the needed parking facility as an adjunct of the country club.

Clearly, a roadhouse is a business facility within the meaning of a restrictive covenant prohibiting all business activity. A country club, on the other hand, is essentially a social organization. The *Bennett* case is not apposite here.

Lots 1 and 2 of block 3 were planted to grass, developed, and used as the tees for the first hole of the second nine of the golf course. Lots 3, 4, and 5, in their unimproved condition, were used for parking purposes. Respondent made no objection to such use. He objected only when it was planned to make the area more suitable for the established use. The parking facilities were reasonably necessary for the successful operation of the golf course. Space for auto-

mobile parking is essential to the development of any facility where substantial numbers of people gather. The trial court found that the Wenatchee Golf and Country Club Addition was "one of the finest residential areas in Eastern Washington." Its character as such is certainly due to the fact that it lies between the two nines of the golf course. The very name of the plat, "Country Club Addition," suggests its dependence upon the continued successful operation of the golf club.

The conduct of the parties to the agreement, and all of the surrounding circumstances, establish that the intent of the parties was that the covenants would not restrict such an improvement. *B. T. Harris Corp. v. Bulova, supra.*

Restrictive covenants will not be extended by implication to include matters not clearly expressed in the agreement. Applying the rules heretofore stated to the facts in the instant case, we conclude that the improvement of the parking lot does not constitute a "business trade," within the restrictive covenant.

The judgment is reversed, and the cause remanded with instructions to dissolve the permanent injunction.

Donworth, Finley, Weaver, and Hamilton, JJ., concur.

Hunter, J. (dissenting)—The restrictive covenant with which we are concerned in this case applies to all the lots contained in the Country Club Addition. This area is situated east of East Wenatchee and overlooks the Columbia River to the west.

It is clear to me, as it was to the trial court, that the restrictive covenants in the notice and agreement are to protect the area for residential purposes. The restrictive covenant in question, in simple language, prohibits the use of any of these residential lots from being used to carry on a "business trade."

The Wenatchee Golf and Country Club, Inc., proposed to use lots 3, 4 and 5 of block 3, as a permanent parking area for its members and guests in connection with the operation of its club activities. There is substantial evidence in the record to support the trial court's findings that these ac-

tivities include business operations of a nonprofit social club, and that the proposed operation of the parking facilities would be directly related to the accomplishment of this business activity.

The trial judge quotes the following from the case of *Bennett v. Consolidated Realty Co.*, 226 Ky. 747, 11 S. W. (2d) 910. I disagree with the majority opinion that the case is not apposite. It speaks for itself.

" ' The use of the lots by Bennett's patrons was plainly a use for business purposes. It was necessary to have a parking place for these automobiles. The parking place was an incident to the roadhouse, without which the roadhouse could not have been successfully operated under the circumstances. Bennett was carrying on the business of operating the roadhouse; and, in providing parking places for his patrons, he was simply performing an incident of that business. While such provisions in deeds are not construed to create restrictions beyond the fair and natural meaning of the words used, read in the light of the circumstances under which they were used, they will be enforced according to their fair and natural meaning, in the absence of fraud or mutual mistake. To hold that no trade or business was permitted on these lots would be to refuse to enforce the provision according to the plain meaning of the common words of everyday speech in which it is expressed; for such a use as Bennett was making of the property would be especially objectionable in a residential section, and the restriction was inserted to protect the subdivision for residential purposes.' "

The trial judge then stated:

"Now, that is the very purpose of the restriction here, to protect this area for residential purposes. And while it might not be a noxious or offensive use of the land, I don't see how you can divorce it from the fact that it is a business venture. While it is true that maybe this is a non-profit corporation and that this is used by members for their pleasure, still I think as far as these restrictions go this is a business venture and it is in support of a business venture. If I were to ignore these restrictions I think it would mean that restrictive covenants have no force and effect whatever."

In my opinion, the reasoning of the *Bennett* case and the conclusions and logic of the trial judge are unassailable.

It seems to me that we would indeed be naive in this period of supermarkets, shopping centers and modern-day business, if we hold that parking areas in connection with business operations are not a part of the business.

The majority say the covenant does not apply to a nonprofit social club. The language "business trade" is broad and encompasses the conduct of any business, be it a private business or a business operated by a nonprofit social club. If it was the intention of the parties to the agreement that the restrictive covenant should not apply to business operations of a nonprofit social club, the covenant should have so provided.

From the tenor of the trial judge's opinion, I am sure that he appreciated, as do we, the desirability of the Country Club having the use of the lots in question for parking facilities for a more efficient operation of the Country Club's activities; and that the success of its activities will be reflected generally in the values of the residential properties in the area. The restriction in the covenant must nevertheless apply.

I would affirm the trial court.

ROSELLINI, C. J., HILL and HALE, JJ., concur with HUNTER, J.

April 6, 1965. Petition for rehearing denied.