974 P.2d 836 (1999)
137 Wash.2d 683
Jim C. HOLLIS and Connie M. Hollis, husband and wife; Richard L. Mansor And Toni C. Mansor, husband and wife, Respondents,
v.
GARWALL, INC., a Washington Corporation; Stephen Garner and Jane Doe Garner, husband and wife; Charles Wallin and Jane Doe Wallin, husband and wife; Ibex Construction, Inc., a Washington Corporation, Petitioners.
No. 66254-1.
Supreme Court of Washington, En Banc.
Argued September 24, 1998.
Decided April 15, 1999.
Reconsideration Denied June 2, 1999.
*838 Winston & Cashatt, James Reed, Spokane, McGrane & Schuerman, David E. McGrane, Colville, for Petitioners.
David I. Davison, Winslow, for Respondents.
*837 GUY, C.J.
This is an action to enforce a restrictive covenant set forth in a subdivision plat. We accepted review to resolve a conflict existing between the divisions of the Court of Appeals with respect to whether the "context rule" articulated in Berg v. Hudesman, 115 Wash.2d 657, 801 P.2d 222 (1990), applies to the interpretation of restrictive covenants.
We now hold that the Berg rule applies to the judicial interpretation of restrictive covenants. Applying that rule to the case before us, we affirm the result reached by both the trial court and the Court of Appeals.

FACTS
In January 1981, the owners of 360-plus acres of land near the City of Chewelah in Stevens County subdivided the land and filed a six-page plat titled, "Short Plat 79-80 by Survey." The property was divided into 18 parcels. Fourteen, designated Tracts A through N, are just over 20 acres each in size. The remaining four parcels, labeled SP-1 through SP-4, range in size from just over 10 acres to just under 19 acres. There is nothing in the plat to indicate that Tracts A through N are to be treated differently than SP-1 through SP-4. The first two pages of the plat show the boundaries of the various parcels. The legal descriptions of the parcels are set forth on the last four pages. Page three additionally contains a surveyor's certificate, plat certificate, auditor's certificate, and an acknowledged "owner's certificate," which states: "We the undersigned do hereby acknowledge that this plat, as described and shown hereon has been made with our consent and in accordance with our desires." The owner's certificate is signed by 10 individuals.[1] A three-paragraph section labeled "Restrictions" is set forth in the upper left corner of page three of the plat, and states:
RESTRICTIONS
1. Prior to construction, placement or development of any living quarters, wellsites or roadways with this plat, a permit to install an individual sewage disposal system shall be secured from the N.E. Tri-County Health District.
2. No tract or lot shall be further divided for sale or lease without prior approval of the Plat Administrator.

*839 3. This plat is approved as a residential subdivision and no tract is to have more than one single family residential unit. Conversion of any lot to other than its authorized occupancy must be in accordance with authorizations associated with separate application and procedure.
Exhibit 1, at 3 (emphasis added).
In June 1981, Plaintiffs Richard and Toni Mansor bought SP-2, an 18.75-acre lot within the subdivision. Their statutory warranty deed sets out verbatim the above restrictions. The Hollis property was acquired in May 1986 (SP-3), and June 1990 (SP-4). The warranty deed and real estate contract connected with the purchase of the Hollis property show that their lots are subject to the restriction quoted above.
In October 1993, Defendant Garwall, Inc. purchased Tract B.[2] The statutory warranty deed transferring ownership in that property states that the tract is subject to easements set forth in the Short Plat 79-80 by Survey, but does not specifically mention the three restrictions contained in that plat.
In May 1995, Garwall, Inc., with IBEX Construction, Inc., cleared the land in Tract B and began a mining and rock crushing operation to provide rock for a nearby highway project. The operation included blasting, crushing rock, production of asphalt, development of a slurry pond, and continuous truck traffic to remove the crushed rock off the property. Plaintiffs Hollis and Mansor (hereafter Plaintiffs) notified Garwall that they objected to the use of the land for a rock crushing operation and that the operation violated the subdivision's restrictive covenants. When Garwall and IBEX continued with their mining operation, Plaintiffs filed this action for injunctive relief and for damages.[3]
The Plaintiffs moved for partial summary judgment, claiming Garwall's mining and rock crushing activities violated the plat restriction language as a matter of law. Plaintiffs argued that the language of the plat restriction created a residential subdivision and limited each tract to one single family residential unit. Garwall responded that the intent of the subdividers in agreeing to the restrictions was to place restrictions only on the four smaller lots, SP-1 through SP-4. In support of its position, Garwall offered an affidavit of Ron Matney, one of the original owners/developers of the subdivision, stating that the developers intended the restriction to apply to the smaller lots but not to the larger ones. Garwall also offered the affidavit of a Stevens County plat administrator, who states that the County required approval of the short plat but not of the entire subdivision shown in the "Short Plat 79-80 by Survey." The plat administrator testified by affidavit that the restriction language is required in short plats. She further testified that it was not the County's intent to establish any restrictions as to the uses that could occur on Tract B, the property involved here.
The trial court refused to consider extrinsic evidence to prove the intent of the original developers and granted the Plaintiffs' motion for partial summary judgment. The trial court ruled, in pertinent part: (1) The subdivision document (Exhibit 1) is not ambiguous with respect to the "Restrictions" provisions. (2) The affidavits submitted by Garwall were not admissible because the subdivision document was not ambiguous. (3) The "Restrictions" provision applies to all property within the subdivision, allows only residential use, and prohibits commercial mining and related activities. The trial court granted a permanent injunction and ordered that the Plaintiffs could proceed to trial with the damages portion of their case.
*840 Garwall appealed, arguing that extrinsic evidence should have been admitted, under Berg, 115 Wash.2d 657, 801 P.2d 222, to show the intent of the developers of the subdivision. The Court of Appeals agreed with the trial court that the Berg rule does not apply to the interpretation of restrictive covenants. Hollis v. Garwall, Inc., 88 Wash.App. 10, 945 P.2d 717 (1997).
After the Court of Appeals filed its opinion, Garwall moved to supplement the record with an additional affidavit. The Court of Appeals denied the motion, holding that it would be inequitable, and thus inconsistent with RAP 9.11(a)(6), to permit Garwall to wait until the Court of Appeals had issued its opinion to come forward with evidence that might have supported a different result.[4]Hollis, 88 Wash.App. at 17-18, 945 P.2d 717.
We granted Garwall's petition for review in order to resolve a conflict between the Court of Appeals decision in this case and decisions of Division One.

ISSUES
1. Does the "context rule" articulated in Berg apply to the judicial interpretation of a restrictive covenant set forth in a subdivision plat?
2. Does the restriction set forth in the plat which is the subject of this action limit the use of all the property in the subdivision to residential purposes?
3. Is a defendant entitled to a trial to balance the equities and consider the relative hardships of the parties before an injunction may be issued prohibiting a particular use of defendant's property?

DISCUSSION
When reviewing an order on summary judgment, we engage in the same inquiry as the trial court. Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994). Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits, if any, show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c); Parry v. Hewitt, 68 Wash.App. 664, 667-68, 847 P.2d 483 (1992). The facts and all reasonable inferences are considered in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo. U.S. Life Credit Life Ins. Co. v. Williams, 129 Wash.2d 565, 569, 919 P.2d 594 (1996); Mountain Park Homeowners Ass'n, 125 Wash.2d at 341, 883 P.2d 1383.
In granting summary judgment in the present case, the trial court ruled, as a matter of law, that the language contained on the face of the plat was a restrictive covenant and that the restriction limited the use of all property within the subdivision to residential use.
The first question we consider is whether the "Restrictions" contained on the face of the subdivision plat should be considered a restrictive covenant.
A covenant is:
[A]n agreement or promise of two or more parties that something is done, will be done, or will not be done. In modern usage, the term covenant generally describes promises relating to real property that are created in conveyances or other instruments.
9 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 60.01[2], at 60-5 (1998) (footnotes omitted); Shafer v. Board of Trustees of Sandy Hook Yacht Club Estates, Inc., 76 Wash.App. 267, 274, 883 P.2d 1387 (1994). See also 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATEPROPERTY LAW § 3.1, at 121 (1995).
There are essentially two kinds of covenants that run with the landreal covenants and equitable covenants. See generally *841 STOEBUCK, supra § 3.1, at 121; William B. Stoebuck, Running Covenants: An Analytical Primer, 52 WASH. L. REV. 861 (1977); 1 WASHINGTON STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 14.2 (3d ed.1997). Washington cases have generally not distinguished between the two kinds of covenants. STOEBUCK, supra § 3.1, at 121.
Where enforceability of a covenant is based, in part, on actual or constructive notice of a restriction, rather than on an incorporation of the restriction in a deed, the covenant is generally considered an equitable restriction. STOEBUCK, supra § 3.10. If a restrictive covenant exists here, it can only be an equitable one, as the restrictions are not set forth in all deeds to the properties. The elements which are necessary for finding an equitable restriction in the subdivision setting are: (1) a promise, in writing, which is enforceable between the original parties; (2) which touches and concerns the land or which the parties intend to bind successors; and (3) which is sought to be enforced by an original party or a successor, against an original party or successor in possession; (4) who has notice of the covenant. See Stoebuck, 52 WASH. L. REV. at 909-10.
With respect to the first element, we note that the writing containing the covenant is often recorded as a declaration of covenants, see, e.g., Mountain Park Homeowners Ass'n, 125 Wash.2d 337, 883 P.2d 1383, or is set forth as a restriction contained in the deed transferring an interest in the property. STOEBUCK, supra § 3.20, at 155-56. However, the restriction may also be contained on the face of the subdivision plat. See, e.g., Thorstad v. Federal Way Water & Sewer Dist., 73 Wash.App. 638, 870 P.2d 1046 (1994); Hagemann v. Worth, 56 Wash.App. 85, 782 P.2d 1072 (1989). In the present case, the restrictions are in writing, contained on the face of the subdivision plat, and are signed by the owners/developers. It appears from the face of the plat that the owners of this 360-acre subdivision agreed to be bound by the "Restrictions" set forth on the plat and that the restrictions were part of the subdivision plan. As noted above, each of the 10 owners signed the face of the plat certifying that the plat, "as described and shown hereon has been made with our consent and in accordance with our desires." The "restrictions" are clearly labeled as such and they set forth an apparent intent on the part of the developers that the subdivision be a "residential" subdivision.
Garwall argues that in determining whether a restrictive covenant exists, the court should admit extrinsic evidence showing whether the owners, the county and the surveyor intended the restrictions to apply to the larger tracts. Its argument in this regard goes to the interpretation of the covenant, not to its existence, however. The only evidence in the record of the original owners' intent regarding the creation of a restrictive covenant is the affidavit of original owner Ron Matney. In that affidavit, Mr. Matney testifies that the owners did intend to create a restriction, albeit one limited to the smaller lots. The first element is met.
The second element requires the restriction to touch and concern the land or be intended to bind successors in interest. A restriction, such as the one involved here, limiting the use of the property, touches and concerns the land. Leighton v. Leonard, 22 Wash.App. 136, 139, 589 P.2d 279 (1978). See Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 854 P.2d 1072 (1993) (covenant restricted use of property to single-family residential purposes only).
The third element is met because the parties involved in this lawsuit are in possession of the properties and are successors in interest to the original developers/owners.
The fourth element also is met because the plat was recorded, with the "Restrictions" set forth on the face of the plat. Olson v. Trippel, 77 Wash.App. 545, 550-51, 893 P.2d 634 (1995) (the general rule is that a person purchasing real property may rely on the record title to the property, in the absence of facts sufficient to put the purchaser on inquiry). Additional notice was given to Garwall in a reference to the recorded plat contained in its deed to the property.
We hold that the restriction on the face of the plat is an equitable covenant.
*842 We now consider whether the Berg "context rule" applies to the interpretation of a restrictive covenant.
In Berg, this court adopted the Restatement (Second) of Contracts §§ 212, 214(c) (1981). Called the "context rule" by the Berg court, these Restatement sections permit a court to look to extrinsic evidence to discern the meaning or intent of words or terms used by contracting parties, even when the parties' words appear to the court to be clear and unambiguous. Berg, 115 Wash.2d at 668-69, 801 P.2d 222. In adopting the "context rule," Berg explicitly rejected the plain meaning rule. Berg, 115 Wash.2d at 678-79, 801 P.2d 222. Initially Berg was viewed by some as authorizing unrestricted use of extrinsic evidence in contract analysis, thus creating unpredictability in contract interpretation. See, e.g., Margaret N. Kniffin, A New Trend in Contract Interpretation: The Search for Reality as Opposed to Virtual Reality, 74 OR. L. REV. 643, 660 (1995); Steven A. Reisler, Contract Litigation Post-Berg v. Hudesman: Did Your Black-and-White Contract Turn a Lighter Shade of Pale?, 48 WASHINGTON STATE BAR NEWS No. 6, at 27 (pt. 1), No. 7, at 25 (pt. 2) (1994). During the past eight years, the rule announced in Berg has been explained and refined by this court, resulting in a more consistent, predictable approach to contract interpretation in this state.
However, our appellate courts have disagreed as to whether to apply Berg to the interpretation of written documents involving real property. For example, Division Two of the Court of Appeals held that Berg did not apply to a dispute over the meaning of an agreement establishing an easement, where the agreement was recorded and included in the chain of title. Olson, 77 Wash.App. at 553, 893 P.2d 634. In determining that the Berg rule did not apply, the court held:
To hold otherwise would be to require that a subsequent purchaser investigate not only the chain of title, but also the "context" within which each conveyance in the chain was executed. That would be an impractical burden, perhaps an impossible one, and would virtually destroy the utility of the real estate recording system.
Olson, 77 Wash.App. at 553, 893 P.2d 634.
Division One of the Court of Appeals, on the other hand, has explicitly or impliedly approved the application of the context rule to the interpretation of restrictive covenants in Thorstad, 73 Wash.App. 638, 870 P.2d 1046; Lakes at Mercer Island Homeowners Ass'n v. Witrak, 61 Wash.App. 177, 810 P.2d 27 (1991) (interpretation of the word "fence"); Parry, 68 Wash.App. 664, 847 P.2d 483 (interpretation of the word "trailer"); and Shafer, 76 Wash.App. 267, 883 P.2d 1387. But see Krein v. Smith, 60 Wash.App. 809, 807 P.2d 906 (1991) (failing to mention Berg and holding that words in a restrictive covenant were to be given their ordinary meaning). Each of these cases was decided before this court's decision in Mountain Park Homeowners Ass'n, 125 Wash.2d 337, 883 P.2d 1383.
Division Three, in Hollis, agreed with the trial court that extrinsic evidence was not admissible for the purpose of determining the intent of the restrictions. The court held that application of the context rule to the interpretation of restrictive covenants was impliedly rejected by this court in Mountain Park Homeowners Ass'n, 125 Wash.2d 337, 883 P.2d 1383.
In 1994, in Mountain Park Homeowners Ass'n, without mentioning Berg or the context rule, we stated:
A court must construe restrictive covenants by discerning the intent of the parties as evidenced by clear and unambiguous language in the document. The court must consider the document in its entirety. Only in the case of ambiguity will the court look beyond the document to ascertain intent from surrounding circumstances.

125 Wash.2d at 344, 883 P.2d 1383 (emphasis added) (citations omitted). See also Mains Farm Homeowners Ass'n, 121 Wash.2d at 815-16, 854 P.2d 1072 (in determining the intent of a restrictive covenant, the court generally gives the language its ordinary and common use and will not read the covenant so as to defeat its plain and obvious meaning); Metzner v. Wojdyla, 125 *843 Wash.2d 445, 450, 886 P.2d 154 (1994) (without mentioning the context rule, this court held that language in a covenant is to be given its ordinary and common use).
In 1997, in Riss v. Angel, 131 Wash.2d 612, 621, 934 P.2d 669 (1997), this court again did not mention Berg when it held that in determining intent, language is given its ordinary and common meaning. However, we stated that where there is an ambiguity as to the intent of the those establishing the covenants, it may be resolved by considering evidence of the surrounding circumstances. Riss, 131 Wash.2d at 623, 934 P.2d 669.
In Riss we reiterated that the primary goal in interpreting covenants that run with the land is to determine the intent or purpose of the covenants. Riss, 131 Wash.2d at 623, 934 P.2d 669.
Under Berg and cases interpreting Berg, extrinsic evidence may be relevant in discerning that intent, where the evidence gives meaning to words used in the contract. Nationwide Mut. Fire Ins. Co. v. Watson, 120 Wash.2d 178, 189, 840 P.2d 851 (1992) (extrinsic evidence illuminates what was written, not what was intended to be written). However, admissible extrinsic evidence does not include:
 Evidence of a party's unilateral or subjective intent as to the meaning of a contract word or term;
 Evidence that would show an intention independent of the instrument; or
 Evidence that would vary, contradict or modify the written word.
See In re Marriage of Schweitzer, 132 Wash.2d 318, 326-27, 937 P.2d 1062 (1997); U.S. Life Credit Life Ins. Co., 129 Wash.2d at 569-70, 919 P.2d 594; Nationwide Mut. Fire Ins. Co., 120 Wash.2d at 189, 840 P.2d 851. See also Lakes at Mercer Island Homeowners Ass'n, 61 Wash.App. at 181-82, 810 P.2d 27 (determining that extrinsic evidence was admissible to elucidate the parties' meaning of the word "fence" in a restrictive covenant).
In light of the guidelines which we have developed to aid in the application of the Berg rule, and in light of recent clarifications in the law governing interpretation of restrictive covenants, we deem it unnecessary to carve out an exception to the Berg rule in cases which call for the interpretation of restrictive covenants. An application of the Berg rule to restrictive covenants enables trial courts to look to the surrounding circumstances of the original parties to determine the meaning of specific words and terms used in the covenants. This approach is consistent with the general rules for construing covenants, Riss, 131 Wash.2d 612, 934 P.2d 669, and is consistent with this court's guidelines governing the interpretation of contracts generally.
We now apply the "context rule" to the case before us. Our primary objective in this analysis is to determine the intent or purpose of the covenant. Burton v. Douglas County, 65 Wash.2d 619, 621-22, 399 P.2d 68 (1965); Mains Farm Homeowners Ass' n, 121 Wash.2d at 818, 854 P.2d 1072. Garwall argues that the trial court erred in refusing to consider extrinsic evidence, contained in the affidavit of Ron Matney, showing that the developers of the subdivision intended the restrictions to apply only to the smaller parcels of land included in the survey.
However, this evidence is not admissible under Berg, as it is the unilateral and subjective intent of 1 of 10 of the original contracting parties. Garwall additionally contends that the Matney affidavit and the affidavit of the Stevens County plat administrator should be considered to show that the parties did not intend to limit the use of the land to residential purposes, but intended to "permit" residential use of the land. This interpretation contradicts the language of the plat which, itself, terms the limitation on use a "restriction." Additionally, the affidavit of Ron Matney shows that the intent of the subdividers was to restrict (not permit) at least the smaller parcels to residential use. The interpretation suggested by Garwall would require this court to redraft or add to the language of the covenant. Under Berg, the extrinsic evidence offered would not be admissible for this purpose. Extrinsic evidence is to be used to illuminate what was written, not what was intended to be written. *844 Nationwide Mut. Ins. Co., 120 Wash.2d at 189, 840 P.2d 851.
Garwall additionally argues that application of the restriction should be limited to SP-1 through SP-4 because the language of the restriction was intended to apply only to the subdivision's short plat.
The section labeled "Restrictions" contains the following pertinent language:
This plat is approved as a residential subdivision and no tract is to have more than one single family residential unit.
Exhibit 1, at 3.
The meaning of the words "plat" and "subdivision" in the language of the restriction is not ambiguous and has not been shown by Garwall to be subject to more than one reasonable construction. The evidence offered by Garwall also does not support a conclusion that the parties intended the language to have anything but its usual meaning in the subdivision setting. The meaning of the words is set forth in the statute governing plats, subdivisions and dedications, RCW 58.17. That statute defines the pertinent words as follows:
(1) "Subdivision" is the division or redivision of land into five or more lots, tracts, parcels, sites or divisions for the purpose of sale, lease, or transfer of ownership, except as provided in subsection (6) of this section.
(2) "Plat" is a map or representation of a subdivision, showing thereon the division of a tract or parcel of land into lots, blocks, streets and alleys or other divisions and dedications.
. . . .
(6) "Short subdivision" is the division or redivision of land into four or fewer lots, tracts, parcels, sites or divisions for the purpose of sale, lease, or transfer of ownership....
. . . .
(8) "Short plat" is the map or representation of a short subdivision.
RCW 58.17.020.
Applying the definitions set forth in the statute to the document involved here leads us to conclude that the "Short Plat 79-80 by Survey" is a plat, as defined by RCW 58.17.020(2). The residential "subdivision" is reasonably interpreted as the entire subdivision, not just the short plat.
Although Garwall argues that the language, "residential subdivision," is ambiguous with respect to whether commercial or business uses might be included in the permitted use, the extrinsic evidence contained in the record, in the affidavit of Ron Matney, does not support this interpretation of the restriction. Mr. Matney's affidavit states:
The memorandum of the plaintiff ... states as follows: "in this case it is clear that the [owners/developers] intended to create a residential subdivision exclusively". This statement is not true with regard to the property of the defendant Garwall. It is only true as to those four short platted lots within Short Plat 79-80.
The only real dispute, based on the Matney affidavit, is whether the restriction is limited to the smaller lots. Under the language of the plat, it is not so limited. Without changing the language of the written document before us, we are unable to interpret the plat "restrictions" as applying only to the smaller parcels.
This court has previously determined that a residential use restriction prohibits any commercial or business use on the property. Metzner, 125 Wash.2d at 451, 886 P.2d 154 (interpreting language restricting the use of the property to "residential use only," held a family day care was incompatible with residential use restriction); Mains Farm Homeowners Ass'n, 121 Wash.2d at 820-21, 854 P.2d 1072 (adult family home is inconsistent with "single family" residence restriction); Hagemann, 56 Wash.App. 85, 782 P.2d 1072 (foster home for elderly was a business and in violation of restrictive covenant prohibiting businesses within residential subdivision).
Without construing the other uses that might be allowed in a residential subdivision, it seems clear that a mining and rock crushing business is not residential or incidental to a residential use.
We therefore hold that the restrictions set forth on the face of the plat are restrictive *845 covenants affecting the use of the property; that extrinsic evidence offered by Garwall is not admissible under Berg to modify the language of the restrictions so that they impact only the smaller lots; that the language of the restrictions limits the use of the property to that falling within the definition of "residential use;" and that a mining and rock crushing operation is not a residential use, or incidental to a residential use.
Garwall finally argues that even if the trial court correctly interpreted the restriction language, it erred in enjoining Garwall from its rock crushing activities without first weighing the relative hardships of the parties. Restrictive covenants are designed to make residential subdivisions more attractive for residential purposes and are enforceable by injunctive relief. Metzner, 125 Wash.2d at 450, 886 P.2d 154. To establish the right to an injunction, the party seeking relief must show (1) that he or she has a clear legal or equitable right, and (2) that he or she has a well-grounded fear of immediate invasion of that right. Hagemann, 56 Wash.App. at 87, 782 P.2d 1072; Metzner, 125 Wash.2d at 450, 886 P.2d 154 (no showing of substantial damage from the violation of a restrictive covenant need be shown to enjoin a violation). Garwall relies on Holmes Harbor Water Co. v. Page, 8 Wash.App. 600, 603, 508 P.2d 628 (1973), in support of its position. Holmes holds that a court considering whether to grant an injunction may consider and weigh equitable factors, such as the relative hardship likely to result to the defendant if an injunction is granted and to the plaintiff if it is denied.
However, in Bach v. Sarich, 74 Wash.2d 575, 582, 445 P.2d 648 (1968), this court held that the benefit of the doctrine of balancing the equities, or relative hardships, is reserved for the innocent defendant who proceeds without knowledge or warning that his activity encroaches upon another's property rights.
In this case, the Plaintiffs had informed Garwall of the restriction on the use of the land. With this information, and knowing that Plaintiffs objected to its activities, Garwall proceeded with its mining and rock crushing operation. Garwall was not without knowledge or warning that its activities encroached on the rights of others. Garwall is not entitled to a balancing of equities prior to the imposition of an injunction.
Affirmed.
DURHAM, SMITH, ALEXANDER, TALMADGE, JJ., and DOLLIVER, J.P.T., concur.
SANDERS, J. (dissenting)
The majority rests on the false assumption that the restriction at issue here is a strict prohibition against any nonresidential use. I agree with the majority that a mining and rock crushing business "is not residential use, or incidental to a residential use," Majority at 844, but the question isn't that. It is whether nonresidential uses are prohibited by the plain language of the covenant.
The majority in a single sentence dismisses the plain language of the covenant at issue: "This interpretation [that covenant did not intend to limit the use of the land to residential purposes, but intended to "permit" residential use of the land] contradicts the language of the plat which, itself, terms the limitation on use a `restriction.'" Majority at 843.[1] Of course it is a "restriction," but what does it restrict?
The covenant reads:
RESTRICTIONS
. . . .
3. This plat is approved as a residential subdivision and no tract is to have more than one single family residential unit. Conversion of any lot to other than its authorized occupancy must be in accordance with authorizations associated with separate application and procedure.
Majority at 839 (quoting ex. 1, at 3). The covenant restricts residential use to no more than one single-family home per tract; however, nowhere in this language can one find a prohibition of all nonresidential uses of the *846 land.[2] The majority does not even claim nonresidential uses are ipso facto prohibited just because the land was subdivided under the residential subdivision statute. Were that the rule the result would be catastrophic since nonresidential uses, where otherwise consistent with zoning requirements, are common on land subdivided under the residential subdivision statute.
Nearly 90 years have passed since we observed,
[i]t seems to be well settled law that words in a deed of conveyance restricting the use of the property by the grantee are to be construed strictly against the grantor and those claiming the benefit of such restrictions, and will not be extended beyond the clear meaning of the language so used.
Jones v. Williams, 56 Wash. 588, 591, 106 P. 166 (1910). Since then we have reaffirmed and explicated this rule of interpretation. See, e.g., Miller v. American Unitarian Ass'n, 100 Wash. 555, 559, 171 P. 520 (1918) ("`[T]here must be shown to be a clear and plain violation of [a restrictive covenant] to justify the interposition of a court of equity to restrain.'") (quoting McDonald v. Spang, 55 Misc. 332, 105 N.Y.S. 617 (1907)); Granger v. Boulls, 21 Wash.2d 597, 599, 152 P.2d 325, 155 A.L.R. 523 (1944) ("`[R]estriction [will not] be enlarged or extended by construction, even to accomplish what it may be thought the parties would have desired had a situation which later developed been foreseen ....'" (quoting 18 C.J. § 450, at 386)); Gwinn v. Cleaver, 56 Wash.2d 612, 615, 354 P.2d 913 (1960) ("Imposed restrictions will not be aided or extended by judicial construction, and doubts will be resolved in favor of the unrestricted use of property."); Burton v. Douglas County, 65 Wash.2d 619, 622, 399 P.2d 68 (1965) ("Restrictions, being in derogation of the common-law right to use land for all lawful purposes, will not be extended by implication to include any use not clearly expressed. Doubts must be resolved in favor of the free use of land.") (citations omitted); Weld v. Bjork, 75 Wash.2d 410, 411, 451 P.2d 675 (1969) (it is well settled in Washington that restrictions on the use of land are construed strictly against grantor and will not be extended beyond clear meaning of the language used.).
The restriction in Granger explicitly stated that no "building or buildings [are] to be used or occupied for any other purpose than a private residence or dwelling ...." Granger, 21 Wash.2d at 598, 152 P.2d 325. We held this language did not prohibit the keeping of farm animals, noting that a prohibition of erecting certain buildings does not "extend to a restriction of the use of the land itself." Id. at 599, 152 P.2d 325.
We reached an identical conclusion when examining nearly identical language in Burton. There we held that a restrictive covenant prohibiting the erection on any plot anything other than a detached, single-family dwelling did not establish that the land was to be used for residential purposes only. "Land may be used without a structure thereon, and here there is no express covenant prohibiting such use. Had the intent been to restrict to residential use only, the parties could have so provided." Burton, 65 Wash.2d at 622, 399 P.2d 68 (citation omitted).
The covenant at issue here is less restrictive in its language than that considered by the court in either Granger or Burton. By this language the restriction merely limits residential use on the tracts to one single-family residence, it does not even purport to limit any lawful nonresidential use of the land. It is the majority, and only the majority, which does that.
The majority asserts this covenant is sufficient to limit all land to residential use only. Majority at 843. The majority states that to read the restriction any other way would "require this court to redraft or add to the language of the covenant." Id. I disagree. It is the majority which has redrafted the restriction to limit the plat to residential use *847 only. In fact the covenant merely limits the residential use to single-family homes.
I am well aware that this court recently announced that when interpretation of "restrictive covenants is necessitated by a dispute... among homeowners in a subdivision governed by the restrictive covenants, rules of strict construction against the grantor or in favor of the free use of land are inapplicable." Riss v. Angel, 131 Wash.2d 612, 623, 934 P.2d 669 (1997). However, nothing in Riss puts the court at liberty to extend restrictions beyond the boundaries of their plain, unambiguous language. It is the role of the court to enforce the covenant, not rewrite it. I dissent.
JOHNSON and MADSEN, JJ., concur.
NOTES
[1] None of the original owners is a party to this lawsuit.
[2] Garwall also owns Tracts D, G, and H.
[3] The lawsuit names as Defendants Garwall, Inc., the owner of Tract B; Stephen and Jane Doe Garner and Charles and Jane Doe Wallin, the owners of Garwall, Inc.; IBEX Construction, Inc., the company which conducted the mining and rock crushing operation; Acme Materials and Construction Co.; Beattie Explosives, Inc.; the State Department of Transportation; and Sid Morrison, in his capacity as Secretary of Transportation. The Department of Transportation, Sid Morrison, and Acme were removed as parties by amended complaints. Beattie was dismissed from the action before the motion for summary judgment was heard. IBEX remains a party but did not separately file a brief in this court. The Defendants involved in this appeal are collectively referred to herein as Garwall.
[4] In its petition for review, Garwall alleged the Court of Appeals erred in denying its motion to supplement the record. However, Garwall did not present any argument to support this claim. We therefore do not consider it on appeal. Only those issues which are properly briefed are considered by the court on appeal. RAP 10.3(a)(5); Saldin Sec., Inc. v. Snohomish County, 134 Wash.2d 288, 297-98 n. 4, 949 P.2d 370 (1998); Johnson v. Mermis, 91 Wash.App. 127, 136 n. 23, 955 P.2d 826 (1998).
[1] Earlier the majority writes that the restrictive language shows "an apparent intent on the part of the developers that the subdivision be a `residential' subdivision." Majority at 841.
[2] The majority seeks support for its conclusion that the covenant does so restrict the land in the affidavit of Ron Matney. Majority at 843. This appears a bit disingenuous where the majority has held just three sentences earlier that Matney's affidavit is not admissible evidence "as it is the unilateral and subjective intent of 1 of 10 of the original contracting parties." Majority at 843.