# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DOUGLAS SLATER and REBECCA
SLATER, husband and wife,

         Appellants,

         v.

JOHN BABICH and MICHELLE
BABICH, husband and wife,

         Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NO. 71195-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED:  June 15, 2015

LEACH, J. — Douglas and Rebecca Slater and John and Michelle Babich all appeal a trial court decision that the view easement in issue protects views of the Olympic Mountains from the main floor of the Slater home and requires maintenance of vegetation on the adjacent property only to the extent that it exceeds the top of the foothills and obstructs the view of the mountains which appear above the hills.  Because the trial court did not err in interpreting the easement or in establishing a process to facilitate future compliance and enforcement of the easement, we affirm.

## FACTS

The Slaters and the Babichs are neighbors in rural King County.  They have lived in their respective homes for more than 20 years.  In addition to the lot on which they reside, the Babichs own several separate adjoining lots of undeveloped land.  In October of 1990, the previous owners of the parcels now

owned by the Babichs and the Slaters executed and recorded an instrument entitled "View Easements and Covenants." This document creates a view easement across one of the Babichs' undeveloped lots that benefits the Slaters' parcel. The "Intent" section of the covenant provides that the properties have a "reasonable unencumbered view of the Olympic Mountains."[1] The covenant further provides that "[i]t is the intent of the grantors . . . to protect the reasonable expectation of landowners to have and protect such views as they exist on the date of the making of this agreement, herein after [sic] called 'the views.'"

The high point of the property where the Slaters built their home has territorial views of trees, power lines, and foothills. When visible, the Olympic Mountains rise above the foothills. Until approximately 2008, the Slaters trimmed trees on the Babich property to preserve their view. The Slaters stopped doing this after the Babichs communicated their intent to do the trimming. But by 2010, some trees had grown high enough to obscure the Slaters' view of the foothills. The Slaters communicated their concern about the vegetation obscuring their view. The Babichs declined the Slaters' offer to meet on site in 2010. The Slaters filed a lawsuit in July 2011.[2]

After the Slaters started this lawsuit, the Babichs trimmed some vegetation. By September 2012, the Babichs had removed much of the offending vegetation. In October 2012, the Slaters filed an amended complaint.

---

[1] The view easement also preserves a "partial view of Mount Rainier." The Slaters did not allege a violation of this aspect of the easement.

[2] The record on appeal does not include the Slaters' initial complaint.

In addition to asserting their view easement rights, the Slaters raised a claim of timber trespass based on three trees allegedly damaged on the Slater property by a tree cutter hired by Babich in September 2012 to remove vegetation to address the Slaters' concerns. The Slaters sought declaratory and equitable relief and damages.

A three-day bench trial took place in September 2013. The court considered the testimony of the homeowners and two arborists and numerous photographs. The parties primarily disputed the nature and extent of the view protected by the easement.

The court entered findings of fact and conclusions of law. The court found that (1) the easement protects the view of the Olympic Mountains but not "the area, powerlines, or any other landmark"; (2) the benchmark for establishing the Olympic Mountain view is the main floor living room window which is "consistent with the upper height of the property prior to construction" of the Slaters' home in 1993; and (3) the view easement requires that vegetation not exceed the top of the foothills below the Olympic Mountains. The court dismissed Slaters' timber trespass claim and established a process to facilitate the Babichs' compliance with the easement. Both parties appeal.

ANALYSIS

Standard of Review

When construing covenants, our primary objective is to determine the intent of the parties to the agreement.[3]  In determining intent, we give a covenant's clear and unambiguous language its manifest meaning.[4]  We must resolve doubts in favor of the free use of land.[5]  We consider the instrument in its entirety and consider the surrounding circumstances when the meaning is doubtful.[6]

Maintenance of Vegetation

The Slaters contend that the purpose of the easement is to "protect the view as it existed when the easement was created."  Thus, according to the Slaters, the covenant requires all vegetation on the Babichs' undeveloped property to remain at the same level as it existed in 1990.  The Slaters claim the court's findings on this point are internally inconsistent and erroneous.  In particular, the Slaters challenge the court's conclusion that in order to preserve the view protected by the easement, "Babich shall only be required to trim or remove that portion of vegetation on the Babich property that rises above the foothills . . . as seen from the Slaters['] main level windows."

---

[3] Burton v. Douglas County, 65 Wn.2d 619, 621-22, 399 P.2d 68 (1965); Riss v. Angel, 131 Wn.2d 612, 621, 934 P.2d 669 (1997).
[4] Burton, 65 Wn.2d at 622.
[5] Burton, 65 Wn.2d at 622; Viking Props., Inc. v. Holm, 155 Wn.2d 112, 120, 118 P.3d 322 (2005).
[6] Burton, 65 Wn.2d at 622.

The Slaters base their argument on the covenant section entitled "Vegetation." This section states that none of the property owners subject to the covenant "shall allow trees or any other form of vegetation on his property to obstruct or partially obstruct 'the views' from any room of any other residence located on the properties." But the section also includes the following "[e]xception and [s]tipulation" that "any and all vegetation controlling 'the views' in place as of the date of the making of this agreement shall be limited to the height and species as of said date of this agreement and shall be bound no further by this agreement."

The Slaters' argument assumes that the purpose of the easement is to protect all views from their property as they appeared in 1990. The Slaters rely on testimony about their intent to "lock in" the vegetation at 1990 levels, but this evidence of their subjective intent cannot modify the express terms of the agreement.[7] The covenant preserves only the "reasonable unencumbered" views of the Olympic Mountains visible from the Slater property above the foothills; it does not preserve any other view as it existed in 1990. Nothing in the view easement and covenant requires removal of any vegetation unless it obstructs or impairs the protected Olympic Mountain view. In other words, the agreement prohibits trees or other vegetation from interfering with the Slaters' reasonable view of the mountains, *except* any vegetation that is already "controlling" that view as of the date of the agreement. That vegetation need not

---

[7] Hollis v. Garwall, Inc., 137 Wn.2d 683, 696, 974 P.2d 836 (1999).

be removed but must be maintained consistent with the "height and species" as it existed in 1990. Thus, the easement requires maintenance of 1990 levels only in this context.

The trial court's interpretation arguably reads out the exemption for vegetation that already interfered with the mountain view at the time of the agreement by requiring removal of any vegetation that reaches the top of the foothills. But this interpretation favors the Slaters. Additionally, the record includes very limited photographic evidence showing which vegetation might have been exempt in 1990, and the Babichs did not object or argue that any particular trees were exempt. The trial court's interpretation of the covenant is consistent with its language and stated purpose.

Living Room Window

The court found that the "benchmark for establishing the Olympic view" from the Slaters' home is the main floor living room window and that preserving the view from this vantage point would also preserve the view from the upper floor and from the "first floor, smaller view." The court also concluded that "[b]asement windows are not a reasonable vantage point for determining compliance" with the view easement. The Slaters argue that these determinations are inconsistent with the covenant which expressly provides that trees may not obstruct the protected Olympic view from "any room" of any residence located on the subject properties.

When the previous owners executed the easement and covenant, the Slaters' home had not been built. The Slaters do not challenge the court's specific determination that the height of the main floor living room window "is consistent with the upper height of the property prior to construction of the Slaters' home in 1993." Nor do they dispute that they excavated the property to construct their three-level home and that the first floor window is approximately two feet below grade level as it existed in 1990. Under these circumstances, the court did not err in finding that the intent of the agreement was to preserve the mountain view as it existed from ground level, nor did the court err in establishing the main floor living room window as the vantage point to preserve a "reasonable unencumbered" view from all three floors.

Enforcement Provisions

The Slaters argue that the court impermissibly added terms to the covenant and imposed obligations that did not previously exist by ordering a mechanism to comply with the view easement.

The court ordered the Slaters to provide by June 15 of each year a photograph taken from the living room window in May or June, identifying any vegetation that extends beyond the top of the foothills. The court's order provides that the Slaters waive any claim of violation for that year if they do not submit this photograph to the Babichs. Upon receipt of this notice, the Babichs must remove or trim the vegetation by October 15. If they provide a written estimate to the Slaters by August 1, they may request payment of one-half the

estimated cost. The Slaters may provide a second estimate, and the parties will use the entity providing the lower estimate. The order recites that "[t]he parties agree that the trimming shall be accomplished in the most professional yet cost effective manner."

The court did not alter the scope of the view easement by providing a mechanism for the Babichs to comply with it and for the Slaters to enforce it. "The trial court has broad discretion in fashioning equitable relief."[8] The Slaters requested equitable relief to protect against "further encroachment"; they simply envisioned a different enforcement mechanism by asking that the court allow them to enter the Babichs' property with notice to trim vegetation. These provisions creating a process to comply with the easement are within the scope of the equitable relief sought by the Slaters.

CR 68 Motion

In their cross appeal, the Babichs claim the court erred in denying their motion for attorney fees because their pretrial offer was more favorable to the Slaters than the judgment they ultimately obtained.

After entry of the court's findings and conclusions, the Babichs filed a motion seeking an award of attorney fees under Washington's offer of judgment rule, CR 68. Under that rule, if a party does not accept a timely CR 68 offer of

---

[8] Cornish Coll. of the Arts v. 1000 Va. Ltd. P'ship, 158 Wn. App. 203, 230, 242 P.3d 1 (2010).

judgment and then obtains a judgment at trial for less than the amount offered, then that party must pay the offeror's costs incurred after making the offer.[9]

The Babichs' pretrial offer, rejected by the Slaters, included an offer to accept judgment in the amount of $20,000, inclusive of damages and attorney fees. Following trial, the court rejected the Slaters' timber trespass claim and awarded no damages. The court also determined that each party prevailed on certain claims and defenses and neither party prevailed for purposes of the covenant's cost and attorney fee provision.

The Babichs claimed entitlement to attorney fees under CR 68. But CR 68 is a cost-shifting device, not a fee-shifting device.[10] While the view easement and covenant provides for both an award of costs and reasonable attorney fees under certain circumstances, it does not define attorney fees as an element of costs. The Babichs fail to articulate any basis supporting their position that CR 68 authorized an award of attorney fees.

---

[9] CR 68 provides, in relevant part:
    At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the court shall enter judgment. . . . If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.
[10] Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 707, 9 P.3d 898 (2000).

## CONCLUSION

The trial court did not err interpreting the covenant to require the preservation of the Slaters' Olympic Mountain view by maintenance of vegetation that reaches the top of the foothills below the mountains. And the trial court granted relief within the scope of equitable relief requested by the Slaters when it established a process to facilitate future compliance and enforcement of the view easement. Furthermore, the court did not err in denying the Babichs' request for attorney fees. As the Babichs were not entitled to attorney fees below based on the offer of judgment rule, we deny their request for an award on appeal on the same basis.[11]

Affirmed.

_Leach, J_

WE CONCUR:

_Schindler, J_     _Cox, J._

---

[11] See RAP 18.1.