# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| NIKI L. CANTRELL, an individual, | No. 57824-7-II |
| Appellant, | |
| v. | |
| DWAYNE R. and LISA L. FARLEY, husband and wife, | UNPUBLISHED OPINION |
| Respondents. | |

CRUSER, C.J. — After Niki Cantrell sued her neighbors, Lisa and Richard Farley,[1] for declaratory relief, the Farleys countersued Cantrell for violating a covenant protecting their views of water features on the Cantrell property. The claims proceeded to a bench trial where Cantrell argued that the covenant was abandoned when the Farleys' predecessors allowed vegetation to block the view. Cantrell also argued that the Farleys were barred from recovery under the doctrine of unclean hands. The trial court disagreed and concluded that Cantrell violated the view covenant by planting hedges and installing screens that blocked the Farleys' view of the water features on Cantrell's property. It ordered Cantrell to remove the obstructions and, when she failed to do so, it found her in contempt. She was ordered to pay $3,200 in sanctions.

---

[1] We use the name Richard throughout this opinion because the record indicates that Dwayne Richard Farley goes by his middle name.

Cantrell appeals, arguing that the trial court's findings of fact are flawed and unsupported by substantial evidence. She also argues that the trial court committed an error of law when it enforced the covenant against her because the covenant did not run with the land. She argues in the alternative that even if the covenant is enforceable against her, the trial court erred by interpreting the covenant contrary to its plain language, by considering extrinsic evidence of the drafter's intent, and by rejecting her defenses of abandonment and unclean hands. We disagree and affirm.

FACTS

I. BACKGROUND

Lisa and Richard Farley own property in Vancouver, Washington. Niki Cantrell owns the adjacent property lying directly to the east of the Farley property. The Cantrell property contains a creek and two ponds. These water features were visible from the Farley property when the Farleys purchased the property in October 2020, despite vegetation growing near the property line.

The Cantrell and Farley properties were once owned by George Gage, but their chains of title diverged in 1941 when Gage conveyed the western portion of his land (what is now the Farley property) to new owners Barrows and Kennedy.

The 1941 conveyance included a covenant protecting the view of Gage's water features for what is now the Farley property. Specifically, the 1941 deed provided,

> It is mutually agreed by all three parties concerned in this Deed, permanently, that no hedges, fences, or any obstruction shall be placed on the East line of the property described herein, whereby the view of present pools, stream or rockeries shall be impaired for owners of respective holdings, this covenant to run with land and be binding upon successors in interest.

Clerk's Papers (CP) at 12. The 1941 deed also created an easement, not at issue in this appeal, for the owner of what is now the Farley property to walk on a path through the Cantrell property. The 1941 deed was recorded by the Clark County Auditor at record number E 49909.

The view-protecting language is not present in any other instrument in the chain of title for either of the parcels. However, the 1941 deed is referred to by its record number, E 49909, in two conveyances of what is now the Cantrell property. First, the record number appears in the 1943 deed conveying lot 63 and the eastern portion of lot 64 from Gage to the Dexters. Second, the record number appears in the 1973 recorded contract conveying the same parcel from the Dexters to Gregg, which provides that the sale was

> SUBJECT to covenants, conditions and restrictions contained in Deed executed by George H. Gage, a widower, dated July 11, 1941, recorded July 16, 1941, under Auditor's File No. E-49909.

Ex. 1 at 3. In addition to the recorded contract, the 1978 deed for the Dexter to Gregg conveyance also provides that the parcel was subject to "[c]ovenants, conditions, and restrictions of record, E 49909." *Id.* at 9. Gregg later subdivided the property into four parcels, one of which was eventually purchased by Cantrell.

Neither the Farleys nor Cantrell knew of the view covenant at the time they purchased their properties in 2020.

## II. LANDSCAPING

Cantrell commenced landscaping work on her property in June 2021. She removed four large trees from her property to remedy what she found to be overgrown vegetation near the property line between her property and the Farleys'. Shortly thereafter, Cantrell wanted to install

a chain-link fence to prevent the Farleys' dog from entering her property to defecate. She also wanted to install a wooden screen to increase privacy between the properties.

Despite the Farleys' objection, Cantrell began installing a chain-link fence and wooden screen near the property line in August 2021. Before the project was complete, on September 23, 2021, the Farleys asked Cantrell to refrain from constructing her proposed 16-foot fence between the properties. Attached to the Farleys' letter were copies of the Farleys' deed history report and the 1941 deed containing the view covenant language.

Cantrell completed the chain-link fence, planted several hedge plants (arborvitae), and erected six-foot wooden screens along the boundary line. The wooden screens and arborvitae plants blocked the Farleys' view of the water features.

### III. LITIGATION

Cantrell sued the Farleys under the Uniform Declaratory Judgments Act, ch. 7.24 RCW, asking the trial court to declare that the view covenant was abandoned through disuse.[2] The Farleys

---

[2] Cantrell also asked the court to declare that the easement was abandoned. The Farleys countersued for interference with the easement because Cantrell's chain-link fence blocked their access. In April 2022, the Farleys moved for a preliminary injunction, asking the court to require Cantrell to install a gate. Following oral argument on the motion, the court granted the motion in part and ordered Cantrell to install a gate in the fence so the Farleys could use the path. Cantrell subsequently installed a gate. The trial court ultimately awarded the Farleys $2,100 in monetary damages for interference with the easement. That ruling is not at issue in this appeal.

Cantrell also brought a nuisance action against the Farleys for allegedly allowing their dog to defecate on the Cantrell property. The court determined that the defecation occurred and that this constituted nuisance per se, but declined to award monetary damages. That ruling is not at issue in this appeal.

countersued Cantrell for violating the view covenant by planting hedge plants and installing screens.[3]

A. BENCH TRIAL

In September 2022, the case proceeded to a bench trial. Cantrell argued that the view covenant was abandoned in exchange for increased privacy very shortly after it was created because the Farleys' predecessors planted greenery that blocked the view. She also argued that the Farleys were barred from recovery under the equitable doctrine of unclean hands based on the same plantings. The Farleys argued that Cantrell's predecessors had not obstructed the view and that any Farley-side violations did not constitute abandonment.

At trial, Cantrell testified extensively about her landscaping renovations. She testified that she removed aged trees from her property in the area near the shared boundary with the Farleys and replaced them with smaller trees. She testified that she installed cedar screens "to give privacy for both properties," explaining that the Farleys' master bathroom was on the other side of the screen. Verbatim Rep. of Proc. (VRP) at 388. She agreed that the screens were "near the eastern boundary of the Farley property." *Id.* at 387. When asked, "Have you added any trees or anything else to the area in front of their bedroom window?" Cantrell responded affirmatively. *Id.* at 364. She also testified that she installed ten arborvitae plants "next to the Farleys' house where the wooden screens are." *Id.* at 443. She agreed that the plantings were "near those wooden screens."

---

[3] The Farleys also countersued for nuisance, negligence, and breach of water covenants. The negligence and water covenant claims were dropped in the Farleys' answer to Cantrell's amended complaint. The nuisance claim, as pled in the Farleys' answer to Cantrell's amended complaint, concerned Cantrell's placement of floodlights shining into the Farley residence. The court ordered Cantrell to reposition the light to shine downward. That ruling is not at issue in this appeal.

*Id.* at 441. She presented photo exhibits showing the line of sight from Cantrell's property toward the Farley home before and after her installation of the screen and arborvitae plants.

Richard Farley and Lisa Farley testified about their view of the water features on the Cantrell property. Richard Farley testified that he could see Mill Creek pond from the master bedroom when the Farleys moved into the home. He also testified that the magnolia tree between the properties enhanced the view rather than obstructing it. He went on to testify that the screens blocked his view of the water features, and that if the screens were removed, the arborvitae plants would also block his view.

Steven Darling, who owned the Farley property from 2015 until the Farleys bought it in 2020, also testified. He explained that when he lived on the property, the water features were visible from his side of the property line despite the vegetation growing near the boundary. He also testified that the previous owners of Cantrell's lot did not install any fencing or plantings in the border area during the time he owned what is now the Farley lot.

The Farleys also presented video of the boundary area that was taken by Darling in 2014. Darling recorded the video from the Cantrell side of the property line as he walked along the path adjacent to the water features. The video shows the view from the edge of Cantrell's pond looking toward the Farleys' home. Visible in the video are multiple mature trees with ivy growing along the ground surrounding them. Between the tree trunks is negative space through which the Farleys' bedroom and bathroom windows are visible from the edge of the pond.

Evidence at trial also included the chains of title for each of the parcels. Cantrell's chain of title included a 1943 deed conveying lots 64 and the eastern portion of lot 63 from the Gages to the Dexters. That deed makes explicit reference to the 1941 deed, which contains the view-

protecting language. Cantrell's chain of title also included a 1973 contract and deed explaining that the property was subject to covenants of record located at E 49909.

B. FINDINGS AND CONCLUSIONS

The trial court provided the parties with draft findings and conclusions on November 9, 2022.[4] The court entered its final findings and conclusions on December 2, which did not significantly differ from its draft findings and conclusions. It ordered Cantrell to remove the arborvitae plants and cedar screens, but allowed the chain-link fence to remain.

The court entered the following findings of fact that are at issue in this appeal:

> 5. Steven Darling owned the [Farleys'] house from 2015 until they bought it. He was able to see the water features on the [Cantrell] property from his property. His neighbor to the east (the then owner of the [Cantrell] house) did not plant or construct anything that obstructed his view of the water features. He and his landscapers used the concrete path on a regular basis to landscape the property.

CP at 78.

> 9. At the time the [Farleys] bought their property they could see Mill Creek stream and ponds to the east from their master bedroom under the canopy of a Magnolia tree just outside their bedroom window. The view of the ponds made the property more attractive to the [Farleys]. There were some other tree trunks and bushes between their house and the water features that partially obstructed the [Farleys'] view.

*Id.* at 78-79.

> 20. From June to September 2021 [Cantrell] did extensive landscaping between the two houses, including cutting down four aged trees. She planned to plant new plants to screen the two properties. She eventually had new trees planted near the [Farleys'] bedroom window.

---

[4] Before any final findings or conclusions were entered, Cantrell filed a motion for "clarification" arguing that the court made a clerical error. CP at 217-19. This motion is referred to in the briefing as a motion for reconsideration, and was treated as such by the trial court when it denied the motion on January 5.

7

*Id.* at 80.

> 24.     [Cantrell] had four six-foot tall cedar screens erected on the west side of her property between her house and the [Farleys']. She also had ten arborvitae plants planted on the east side of the screens. The screens obstruct the [Farleys'] view of the water features on the [Cantrell] property.

*Id.* at 81.

The court also entered the following conclusions of law that are at issue in this appeal:

> 4.     In the instant case, the 1941 deed created an easement benefiting the [Farleys'] property, granting them an easement "on walk on the east side or dwelling, between house and creek". It also created a restrictive covenant, prohibiting all three parties from placing any obstruction on the east line of the [Farleys'] property which impairs any of the owners' view of the then present pools, stream or rockeries. However, since the water features are on the [Cantrell] property, the covenant only actually prevents [Cantrell] from placing obstructions on the east line of the [Farleys'] property that obstruct the [Farleys'] view of the water features.

*Id.* at 82.

> 7.     In this case the intent of the parties at the time of the creation of the covenant in 1941 was to preserve the view looking from the east of what is now the [Farleys'] property of the pools, stream or rockeries then (and still) existence on the [Cantrell] property.

*Id.*

> 9.     The cases cited by the parties generally involve homeowners' associations seeking to enforce covenants against their members. None of the cases address the factual situation in this case. However, some of the language of [*St. Luke's Evangelical Lutheran Church of Country Homes v. Hales*, 13 Wn. App. 483, 534 P.2d 1379 (1975)], is persuasive. Applied to this situation, the defense of abandonment requires evidence that prior violations by the owners of the properties subject to the 1941 covenant have so eroded the intent of the covenant as to make enforcement useless and inequitable. [Cantrell] has not proven that this is the case and has not proved that the covenant in this case was "habitually and substantially violated".

> 10.     In this case there is evidence that shrubs and trees were planted between the [Farleys'] and [Cantrell's] houses over the years, and that these plants grew. But the evidence was that the water features were visible from the [Farleys']

property for many years prior to their purchase of the property, and according to the [Farleys], enhanced their view of the water features. The plantings between the two properties over the years have not eroded the intent of the covenant as to make enforcement useless and inequitable.

11.    Washington appellate courts recognize the equitable principle that one who has violated a building restriction (or restrictive covenant) cannot enforce the building restriction against others. *Reading v. Keller*, 67 Wash. 2d. 86, 89 (1965). However, there exists an exception to the general rule, for situations where the violation was of a minor nature and did not destroy the building scheme. See *J. L. Cooper & Co. v. Anchor Securities Co.*, 9 Wash.2d 45, 113 P.2d 845 (1941).

12.    The thick hedge on the [Farleys'] property line, north of the concrete path, was planted by an earlier owner of the [Farleys'] house. The hedge obstructs the view of some of the water features from the [Farleys'] property. But it does not affect the view of the water features from the [Farleys'] house, the views that seem to be the most important to the [Farleys]. To the degree the planting of the hedge was a violation of the covenant it was minor in nature and did not destroy the intent of the covenant.

*Id.* at 83-84.

19.    The cedar screens installed, and arborvitae planted by [Cantrell] near the [Farleys'] east property boundary obstruct their view of the water features and violate the view covenant. They must be removed.

*Id.* at 85.

22.    The [Farleys] have substantially prevailed in this litigation.

*Id.*

C. ENFORCEMENT OF COURT'S ORDER

After the court ordered Cantrell to remove the arborvitae and cedar screens by December 31, 2022, Cantrell moved to stay enforcement of the court's order pending the disposition of her November 21 motion for reconsideration. The Farleys opposed the motion and sought sanctions for contempt on the ground that Cantrell had not fulfilled her court-ordered obligation to remove the arborvitae and cedar screens.

On January 5, 2023, the court denied Cantrell's motion for reconsideration. The court granted Cantrell's motion to stay enforcement with respect to the period between December 31, 2022 and January 5, 2023.

The court also found Cantrell in contempt and ordered her to pay $100 in sanctions per day of noncompliance beginning on January 6. The court determined that Cantrell complied on February 6 and thereafter ordered her to pay a total of $3,200 in sanctions for 32 days of noncompliance.

Cantrell appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

When the trial court enters findings of fact and conclusions of law following a bench trial, we review its findings for substantial evidence. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). This standard asks whether the evidence is "sufficient to persuade a rational fair-minded person the premise is true." *Id.* We do not reweigh the evidence or substitute our own judgment for that of the trial court. *Id.* at 879-80.

We review the trial court's legal conclusions de novo to determine whether they are legally correct and whether they are supported by the findings. *State Farm Fire & Cas. Co. v. Justus*, 199 Wn. App. 435, 448, 398 P.3d 1258 (2017).

### II. FINDINGS OF FACT

Cantrell challenges a number of the trial court's findings, arguing that they are flawed and unsupported by substantial evidence. We disagree and conclude that each of the challenged findings is supported by substantial evidence.

A. FINDING 5

Cantrell first challenges finding 5, which reads:

> 5.    Steven Darling owned the [Farleys'] house from 2015 until they bought it. He was able to see the water features on the [Cantrell] property from his property. His neighbor to the east (the then owner of the [Cantrell] house) did not plant or construct anything that obstructed his view of the water features. He and his landscapers used the concrete path on a regular basis to landscape the property.

CP at 78. She takes issue with the portion of this finding in which the trial court found that Steven Darling, who owned the Farley property from 2015 until 2020, " 'was able to see' " the water features on his neighbor's land. Br. of Appellant at 45-46 (quoting CP at 78).

Finding 5 is supported by substantial evidence because Darling testified that he was able to see the water features on the neighboring property, notwithstanding the surrounding trees. He testified that his neighbors did not install fencing or plantings in the border area during the time he lived there. The Farleys also presented video taken by Darling in 2014 showing that the view was largely unobstructed at that time. The video shows mature trees growing between the Farley home and the water features with ample negative space between tree trunks. This is sufficient for a fair-minded rational factfinder to determine that Darling was able to see the water features from his property at the time.

B. FINDING 9

Cantrell next challenges finding 9, in which the trial court found:

> 9.    At the time the [Farleys] bought their property they could see Mill Creek stream and ponds to the east from their master bedroom under the canopy of a Magnolia tree just outside their bedroom window. The view of the ponds made the property more attractive to the [Farleys]. There were some other tree trunks and bushes between their house and the water features that partially obstructed the [Farleys'] view.

11

CP at 78-79. This finding is supported by substantial evidence because Richard Farley testified that he could see the Mill Creek pond and other water features from the master bedroom suite when he moved in. He testified that despite the vegetation between the houses, he could still see the water features. Farley also testified that the Cantrell property contained a magnolia tree that enhanced his view of the water features. The tree trunks are also visible in the 2014 video taken by Darling and this finding is supported by Darling's testimony that the property was essentially the same when he sold it to the Farleys. This evidence is sufficient to support the trial court's finding.

C. FINDING 20

Cantrell also challenges finding 20, in which the court found:

> 20.     From June to September 2021 [Cantrell] did extensive landscaping between the two houses, including cutting down four aged trees. She planned to plant new plants to screen the two properties. She eventually had new trees planted near the [Farleys'] bedroom window.

*Id.* at 80. Cantrell takes issue with the court's use of the word " 'near' " because she contends that her plantings were actually "a significant distance" from the Farleys' bedroom. Br. of Appellant at 51 (boldface omitted) (quoting CP at 80).

This finding is supported by substantial evidence in the form of Cantrell's own testimony. She confirmed that she planted trees in "the area in front of their bedroom windows." VRP at 364. She also testified that she installed wooden screens "near" the eastern boundary of the Farleys' property and that she later planted arborvitae "near" the wooden screens. *Id.* at 387, 441. She stated that "on the other side of that was my neighbors' bathroom" referring to the bathroom connected to the Farleys' bedroom. *Id.* at 387. We conclude that substantial evidence supports the court's finding that the plantings were near the Farleys' bedroom.

D. FINDING 24

Cantrell finally challenges finding 24, which reads:

> 24.     [Cantrell] had four six-foot tall cedar screens erected on the west side of her property between her house and the [Farleys']. She also had ten arborvitae plants planted on the east side of the screens. The screens obstruct the [Farleys'] view of the water features on the [Cantrell] property.

CP at 81. She argues that this finding is unsupported by substantial evidence because it is "supported only by the Farleys' testimony, not by a single photograph or video." Br. of Appellant at 52.

As Cantrell agrees, the Farleys' testimony supports finding 24. This finding is also supported by Cantrell's own testimony, in which she stated that she installed the screen "to give privacy for both properties." VRP at 387. Finding 24 is also supported by photo exhibits showing the line of sight from Cantrell's property toward the Farley home before and after her installation of the screen and hedge plants. From this evidence, a rational factfinder could conclude that the screen and plantings installed by Cantrell obstruct the view of her water features from the neighboring property.

III. CONCLUSIONS OF LAW

Cantrell makes three arguments challenging the trial court's legal conclusions. First, she argues that the trial court erred because the covenant was wholly unenforceable against her because it does not run with the land. Second, she argues that the trial court erred when it interpreted the covenant contrary to its plain language and drafter's intent. Third, she argues that the court erred when it concluded that prior violations on the Farley side of the property line do not constitute abandonment of the covenant or unclean hands. We conclude that Cantrell has not shown any legal

error in the trial court's conclusions or that the conclusions are unsupported by the trial court's findings.

A. ENFORCEABILITY OF COVENANT AGAINST CANTRELL

*(1) Legal Principles*

A restrictive covenant is "an agreement or promise between two or more parties that limits permissible uses of land." *Kiona Park Ests. v. Dehls*, 18 Wn. App. 2d 328, 335, 491 P.3d 247 (2021).

In order to bind future landowners, a restrictive covenant must run with the land. *Id.* at 336. A restrictive covenant may run with the land either as a "real covenant" or as an "equitable covenant." *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 691, 974 P.2d 836 (1999). A real covenant runs with the land only if it satisfies the statute of frauds. *Lake Arrowhead Cmty. Club, Inc. v. Looney*, 112 Wn.2d 288, 295, 770 P.2d 1046 (1989).

If a restrictive covenant is contained in a writing that does not satisfy the statute of frauds, it may nevertheless run with the land as an equitable covenant. *Riverview Cmty. Grp. v. Spencer & Livingston*, 181 Wn.2d 888, 898, 337 P.3d 1076 (2014) (affirming that "the statute of frauds is no barrier" to enforcement of an equitable covenant, provided that some writing supports the restriction).[5] However, unlike a real covenant, an equitable covenant is binding on successive

---

[5] *See also Hollis*, 137 Wn.2d at 691 (explaining that the distinction between real and equitable covenants was largely absent from Washington law but going on to analyze restriction as equitable covenant because statute of frauds could not be met).

purchasers "*only if they have notice* of the covenant." *Dickson v. Kates*, 132 Wn. App. 724, 735, 133 P.3d 498 (2006) (emphasis added).[6]

Notice may be constructive or actual. *Id.* Constructive notice arises when the facts and circumstances surrounding the buyer's purchase of the property "would cause an ordinarily prudent person to inquire further." *Albice v. Premier Mortg. Servs. of Wash., Inc.*, 174 Wn.2d 560, 573, 276 P.3d 1277 (2012). The buyer is then said to have "constructive knowledge of everything the inquiry would have revealed." *Id.*

*(2) Application*

Cantrell argues that she is not bound by the covenant contained in the 1941 deed because it does not run with the land either as a real covenant or as an equitable covenant. We disagree and hold that even if the covenant is unenforceable against her as a real covenant, Cantrell had constructive notice of the covenant and therefore the trial court did not err when it enforced the covenant against her.

Cantrell argues that the covenant cannot be enforced against her as a real covenant because it does not satisfy the statute of frauds. She contends she is entitled to raise this argument for the first time on appeal under RAP 2.5(a)(2) as a claim that the Farleys failed to establish facts upon which relief can be granted. However, the statute of frauds is an affirmative defense and is deemed waived if it is not "affirmatively pleaded, asserted with a motion under CR 12(b), or tried by the

---

[6] An equitable covenant runs with the land if it is:

> (1) a promise, in writing, which is enforceable between the original parties; (2) which touches and concerns the land or which the parties intend to bind successors; and (3) which is sought to be enforced by an original party or a successor, against an original party or successor in possession; (4) who has notice of the covenant.

*Id.*

express or implied consent of the parties." *Taliesen Corp. v. Razore Land Co.*, 135 Wn. App. 106, 134, 144 P.3d 1185 (2006). *See also* CR 8(c) (requiring parties to set forth affirmative defenses in their responsive pleadings). The issue, therefore, does not fall within the exception located in RAP 2.5(a)(2). We decline to consider Cantrell's statute of frauds argument because she did not raise the argument below.

Furthermore, the covenant is enforceable against Cantrell in equity because Cantrell had constructive notice of the covenant. Cantrell's chain of title contains at least two conveyances that refer specifically to the 1941 deed by its record number, E 49909. The presence of that record number "would cause an ordinarily prudent person to inquire further" as to what encumbrances, if any, were located in the 1941 deed recorded at E 49909. *Albice*, 174 Wn.2d at 573. It is thus sufficient to place Cantrell on constructive notice of the view covenant contained in that deed.

Therefore, because Cantrell's chain of title placed her on constructive notice of the covenant created in the 1941 deed, the covenant was enforceable against her. The trial court did not err in enforcing the covenant against Cantrell, a successor in interest to the covenantor.

## B. INTERPRETATION OF THE COVENANT

*(1) Legal Principles*

In interpreting a restrictive covenant, the court's primary goal is to ascertain and give effect to the drafter's intent. *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 250, 327 P.3d 614 (2014). Although generally, the interpretation of a restrictive covenant is a question of law, " 'the drafter's intent is a question of fact.' " *Id.* (quoting *Ross v. Bennett*, 148 Wn. App. 40, 49, 203 P.3d 383 (2008)).

We give covenant language its ordinary and common meaning. *Id.* We may consider extrinsic evidence to discern the drafter's intent "where the evidence gives meaning to words used in the contract." *Hollis*, 137 Wn.2d at 695. However, we may not consider evidence that contradicts the written instrument or evidences an intention independent from the instrument. *Id.*

*(2) Application*

Cantrell argues that the trial court impermissibly relied upon extrinsic information to conclude it was the drafter's intent to burden only the Cantrell property and not the Farley property. She goes on to argue that the trial court added language to the covenant by interpreting the language restricting actions *on* the property line to encompass activities *near* the property line.

The trial court correctly concluded that the drafter's intent was "to preserve the view looking from the east of what is now the [Farleys]' property of the pools, stream or rockeries then (and still) [in] existence on [Cantrell]'s property." CP at 82. This conclusion closely tracks the language in the 1941 deed, which stated that "no hedges, fences or any obstruction shall be placed on the East line of the [Farley property] described herein, whereby the view of present pools, stream or rockeries shall be impaired for owners of respective holdings." *Id.* at 12. The 1941 deed makes clear that "respective holdings" refers to the parcel retained by Gage (containing what is now the Cantrell property) and the parcel conveyed by Gage to Barrows and Kennedy (what is now the Farley property) in the deed itself. *Id.*

The trial court went on to interpret the covenant correctly given its factual determination about the drafter's intent. It concluded that the covenant restricted the *owners of both parcels* "from placing any obstruction on the east line of the [Farleys'] property which impairs any of the owners' view of the then present pools, stream or rockeries." *Id.* at 82. The court went on to conclude that

17

the covenant "only actually prevents [Cantrell] from placing obstructions on the east line of the [Farleys'] property that obstruct the [Farleys'] view of the water features." *Id.* This conclusion shows not that the court considered impermissible extrinsic information, but that the court applied its factual determination about the drafter's intent when determining the practical effect of the mutual obligation created by the covenant. Because the drafter's intent was to preserve the view of the Cantrell water features *from the vantage point of the Farley property*, the trial court did not err when it concluded that the *actual effect* of the covenant was only to burden the Cantrell property and not the Farleys' property, notwithstanding that the covenant restricted the owners of both parcels.

Likewise, Cantrell has not shown that the trial court erred when it interpreted the covenant to conclude that "[t]he cedar screens installed, and arborvitae planted by [Cantrell] near the [Farleys'] east property boundary obstruct their view of the water features and violate the view covenant." *Id.* at 85. This conclusion flows directly from the drafter's intent to preserve the view of the Cantrell water features from the Farley property. That unambiguous intent would be frustrated by an interpretation restricting only obstructions placed precisely *on* the property line, as Cantrell asks us to conclude. Because our directive is to give effect to the drafter's intent, we conclude that the trial court did not err when it applied common sense to conclude that the legal effect of the covenant was to restrict not only those obstructions placed *on* the property line, but also any obstructions placed *near* the property line.

Therefore, Cantrell has not shown that the trial court erred when it reached its conclusions about the drafter's intent.

C. ABANDONMENT AND UNCLEAN HANDS

*(1) Legal Principles*

Abandonment and unclean hands are two equitable defenses to enforcement of a restrictive covenant. *Mountain Park Homeowners Ass'n, Inc. v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). The defense of abandonment requires showing prior violations of the covenant that are so habitual and substantial as to make enforcement useless and inequitable. *Id.* at 342. "Violations must be material to the overall purpose of the covenant, and minor violations are insufficient to find abandonment." *Id.*

The doctrine of unclean hands precludes equitable relief for a party who has engaged in "unconscionable" or "morally reprehensible" conduct related to the matter in litigation. *J. L. Cooper & Co. v. Anchor Sec. Co.*, 9 Wn.2d 45, 72, 113 P.2d 845 (1941). The misconduct must be "willful." *Id.* at 74. Evidence of "deceit, false representations, or dishonest behavior" supports application of the unclean hands doctrine. *Id.* at 75. Those who act unjustly or in bad faith are also deemed to act with unclean hands. *See Miller v. Paul M. Wolff Co.*, 178 Wn. App. 957, 965, 316 P.3d 1113 (2014); *Burt v. Dep't of Corr.*, 191 Wn. App. 194, 210, 361 P.3d 283 (2015).

*(2) Application*

Finally, Cantrell argues that the trial court committed legal error when it rejected her argument that the covenant was abandoned due to many years of violations by the Farleys' predecessors in interest. She also challenges the court's rejection of her unclean hands argument based on the same violations. We disagree.

The trial court concluded that Cantrell failed to show that the 1941 covenant was abandoned in the instant case. It reasoned that although the parties' predecessors planted

vegetation between the homes over the years, Cantrell failed to show that those plantings "eroded the intent of the covenant as to make enforcement useless and inequitable." CP at 83.

Cantrell has not shown that this conclusion was legally erroneous or unsupported by the factual findings. The factual findings show that the water features were visible from the Farley property for many years despite the vegetation that grew in the border area, and this supports the trial court's conclusion that the purpose of the covenant was not eroded.[7] The trial court did not err when it concluded that any prior violations were minor and did not show that the covenant was abandoned.

Similarly, the trial court did not err when it rejected Cantrell's unclean hands argument. The court concluded that the Farleys were not precluded from recovering as a result of the "thick hedge" on their property that "was planted by an earlier owner" of their home. *Id.* The court reasoned that any prior violation of the covenant by the Farleys' predecessors was "minor in nature and did not destroy the intent of the covenant." *Id.* at 84. Although the court found that the hedge "largely obstructed" the view, its findings support the conclusion that the violation was minor because the Farleys could still see the water features from elsewhere on the property. *Id.* at 79. And importantly, Cantrell has not shown that the hedge planting was a willful, unconscionable, or morally reprehensible act that would bar recovery under the unclean hands doctrine. Therefore, the trial court's conclusion was not legally erroneous.

---

[7] Cantrell takes issue with the portion of the trial court's conclusion stating that "the water features were visible from the [Farleys'] property for many years" and that the prior plantings, "according to the [Farleys], enhanced their view of the water features." CP at 83. These are factual determinations that are supported by substantial evidence in the record and will not be reweighed on appeal.

No. 57824-7-II

## ATTORNEY FEES

We decline to award Cantrell attorney fees because she has not substantially prevailed. Moreover, Cantrell has failed to identify the legal basis for her fee request and failed to devote a section of her brief to her fee request as required by RAP 18.1(b).

## CONCLUSION

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
CRUSER, C.J.

We concur:

_____
LEE, J.

_____
PRICE, J.

21