[No. 34540. *En Banc.* December 24, 1959.]

JAMES S. DITTY et al., *Respondents*, v. F. KEMPER FREEMAN et al., *Appellants*.[1]

[1]Reported in 347 P. (2d) 870.

*Bogle, Bogle & Gates, Orlo B. Kellogg,* and *George N. Prince,* for appellants.

*Haugan & Shellan,* for respondents.

HUNTER, J.—The plaintiffs and defendants are adjoining landowners of commercial property in Bellevue. Plaintiffs brought this action to quiet title to the westerly 12 to 14 feet of lot 19, block 1, Cheriton Fruit Gardens (Orchard) Tract, King county, Washington.

The plaintiffs allege that since the first day of March, 1928, they have been the owners in fee simple of lots 19 and and 20, block 1, of the above tract, with the exception of the southerly 113.5 feet and the easterly 50 feet of lot 20, or less, as required for a 100 foot right of way; that the defendants claim some interest in the westerly 12 to 14 feet of lot 19, where they have erected a fence along the easterly line of the disputed strip and have thereby committed trespass and damaged the plaintiffs' property; that there is a shortage of land as compared to the plat and their location of the boundary line of lots 18 and 19 is correct as a result of the required apportionment of the land to fit the plat.

The defendants allege they have held title to lot 18 since 1946. They deny that their fence was placed on lot 19, but that it was, instead, on lot 18; that there was no shortage of land and if there was any shortage of land, which would place their fence on lot 19, then that line was the boundary by acquiescence, or the defendants had acquired title to that portion of lot 19 by adverse possession.

The plat referred to is designated as exhibit No. 1, and

has been reproduced to permit a better understanding of this opinion.

At the conclusion of the trial, the court found that when block 1 was laid out on the ground, it did not fit within its intended confines (between the north-south 16th line on

W. L. Lynn Surveyor

the east and the section line on the west); that there was an actual shortage and deficiency on the ground along the southerly tier of lots in block 1, east to west, amounting to 17.62 feet, which had to be apportioned equally among the equal-sized lots 12 to 20 in said block; that the defendants, however, by adverse possession, had acquired title to the north 75 feet of the disputed strip, and title to the remainder of the strip, less the southerly 113.5 feet not here in issue, was quieted in the plaintiffs; that the defendants be required to remove the fence; that nominal damages of one

dollar be awarded the plaintiffs; that the true boundary line of the lot be established on the ground on the basis of the findings; and that a commission be appointed to make the determination should the parties disagree.

Judgment was entered accordingly, and the defendants have appealed from that portion of the judgment quieting title in the plaintiffs.

Appellants have made eighteen assignments of error, all of which primarily relate (1) to the court's construction of the plat by placing the center of Peach avenue on the north-south 16th line of the northwest quarter of the section; and (2) to the failure of the court to find that title to the entire strip in question had been acquired by the appellants by acquiescence or by adverse possession.

The appellants' first contention will be resolved upon a determination of the location of the north-south center line of Peach avenue, as intended by the platter. This determination must be made by an interpretation of the plat.

In *Mueller v. Seattle*, 167 Wash. 67, 8 P. (2d) 994 (1932), in determining the intention of the platter in making dedication of streets which would likewise apply here, we said:

"... Evidence of the platter's intention in that regard, however, does not fail by his mere failure to express his intention in words. In the text of 18 Corpus Juris 109, the applicable rule, in so far as it may be stated in general terms, is, we think, well stated as follows:

" 'Plats by which dedications are made are to be interpreted by the court as any other writing would be, and are to be construed as a whole in order that the intention of the party may be ascertained, and every part of the instrument be given effect; *no part of the plats are to be rejected as meaningless, if it can be avoided*; and lines as well as words are to be considered.' " (Italics ours.)

See, also, *Columbia & Puget Sound R. Co. v. Seattle*, 33 Wash. 513, 74 Pac. 670 (1903); *Osborne v. Seattle*, 52 Wash. 323, 100 Pac. 850 (1909); *Frye v. King County*, 151 Wash. 179, 275 Pac. 547, 62 A. L. R. 476 (1929).

The trial court, in making its interpretation of the plat, was assisted by two expert witnesses. The experts agreed

that, as a result of errors in the government survey, the quarter section in question is not a theoretical quarter of 2,640 feet on each of its four boundaries. The north line is, instead, 2,646.68 feet; the east and west 16th line is 2,635.72 feet; the south boundary is 2,624.76 feet; the west boundary is 2,625.90 feet; the east boundary is 2,613.58 feet, and the north-south 16th line is 2,619.24 feet. The experts further agreed that the 16th lines are midway between the section and quarter lines.

 The experts are in substantial agreement that the plat was a drawing board job on the basis of the dimensions of a theoretical section. The first obvious conclusion, therefore, is that there is an insufficient area on the ground to fit the plat. With these facts before us, we will consider the respective contentions of the parties in determining the intention of the platter in locating the center line of Peach avenue on the plat. Upon the correct interpretation being made, the shortage on the ground must be apportioned within the platted area affected to make the plat fit the ground available. In *Booth v. Clark*, 59 Wash. 229, 109 Pac. 805 (1910), we said:

"... In 5 Cyc. 973, it was stated in the text,

" 'Where a tract of land is subdivided and is subsequently found to contain either more or less than the aggregate amount called for in the surveys of the tracts within it, the proper course is to apportion the excess or deficiency among the several tracts.'

"This rule is supported by abundant authority. . . ."

Exhibit No. 1 shows the land being platted as

"... the North half of the Northwest quarter of Section 32 in Township 25 N. Range 5 E., and the Southeast quarter of said N.W. quarter of said Section 32, in the County of King, State of Washington. . . ."

The point of beginning is at the northwest corner of said section 32. The platter then marked off the north 30 feet of the land being platted for the county road, which lies immediately south of the north section line and immediately north of blocks 1 and 2. The platter marked off the west 30 feet of the northwest quarter of the quarter section being

platted for the county road, which thus lies immediately east of the west section line. The platter also marked off the south 30 feet of the southeast quarter of the quarter section being platted for the county road, which thus lies immediately north of the south line of the quarter being platted. Within the quarter section, the platter marked off a north-south right of way 33 feet wide and called it Peach avenue, and an east-west right of way 33 feet wide, which he called Cherry avenue. Peach avenue intersects the north half of the quarter section and Cherry avenue intersects the quarter section from east to west.

The plat (exhibit No. 1) does not indicate directly what effect, if any, Peach avenue or Cherry avenue may have upon the southwest quarter of the quarter section, since that land is not included within the plat. Lot 12 has an indicated north-south length of 4.61 chains and an east-west width of 2.17. These distances have been translated into feet by the expert witnesses as being the distances of 304.26 feet and 143.22 feet respectively.

The trial court and expert witnesses agree that, from the location in which the right of way dimensions have been located upon the plat, it is evident that the platter wanted to indicate that all east-west lines were parallel and that all north-south lines were parallel. It is also obvious that the line which forms the south boundary of the county road at the north of the plat, and the north boundary of blocks 1 and 2, is one line broken only by the intersecting right of ways. The same is true of the line which forms the south boundary of blocks 1 and 2. This is on the basis assumed by the expert witnesses and by the court that the platter drafted his plat as if he were dealing with a theoretical quarter section. On the same assumption, it is obvious that the east boundary of blocks 2 and 3 is one line broken only by the intersection of Cherry avenue, and that the west boundary of blocks 2 and 3 is also one continuous line broken only by the intersection of Cherry avenue.

From a study of the plat (exhibit No. 1), the court assumed, as did the experts, that it was the intention of the platter to make lots 1 through 9, and 12 through 20 of block

1, equal in size; that the lots in block 2 were intended to be equal, as were the lots in block 3.

The appellants contend, as testified to by George W. Kumpf, a land surveyor and civil engineer, that in locating the center line of Peach avenue on exhibit No. 1, the platter started from the west along the east-west 16th line, by first determining the county road of 30 feet. He next measured off nine lots of 2.17 chains, or 143.22 feet wide, totaling 1,288.98 feet, then measured 16½ feet to the center of Peach avenue. This was a total distance of 1,335.48 feet from the west boundary of the quarter section. This was also a distance of 1,305.48 feet from the east boundary of the west county road easterly to a point on the east-west 16th line which was within .48 of one foot of being midway between the said east boundary of the county road and the east line of the northwest quarter. Making the same computation in chains, the expert witness locates the center of Peach avenue on the east-west 16th line midway between the east boundary of the west county road and the east line of the northwest quarter. This makes the platted area equal in blocks 1, 2 and 3, of the theoretical section. Otherwise, in centering Peach avenue on the north-south 16th line, block 1 would have been narrower than blocks 2 and 3, since the county road was on the west of block 1 and there was no county road on the east of blocks 2 and 3.

As further supporting evidence of the platter's intention, the appellants introduced exhibit No. 82, wherein the platter conveyed two lots comprising two acres. Evidence was introduced that a rectangle 2.17 by 4.61 chains equals 10 square chains. No evidence was introduced but we can take judicial notice of the area contained therein by reference to authentic citation. See Webster's New International Dictionary (2d ed.) p. 443 (13) (1954): ". . . 10 square chains equalling one acre. . . ."

In its memorandum opinion, the trial court stated, and we are in agreement, that (1) appellants' exhibit No. 1 was platted as a true quarter section; that (2) lots 12 to 20 inclusive, were intended to be of equal size. Adopting this

premise and applying the plat measurements, the appellants' interpretation of the plat is mathematically correct.

Respondents contend, however, that it is customary when platting a quarter section to center the county roads on the 16th lines; that to place Peach avenue otherwise would create a jog in connecting with a county road to the north; that a dedication of 31:98 feet instead of 16.5 feet of the westerly portion of the southeast quarter of the northwest quarter in the plat would be required in centering the road for Peach avenue according to plat distance, rather than on the 16th line; and that subsequent conveyances of right of ways to the county along 104th avenue by grantees of the original platter, indicate that it was their understanding that Peach avenue was centered on the 16th line and supports respondents' interpretation of the plat. This theory and the reasons given are convincing but cannot be applied, in determining the platter's intention, without disregarding the express plat measurements, which is contrary to the rule of the *Mueller case, supra.* The respondents' position is therefore untenable.

For the reasons herein stated, we hold that the location of Peach avenue must be made in accordance with the plat measurements; and the shortage on the ground must be apportioned within the platted area to make the plat fit the ground available, as heretofore stated under the rule of *Booth v. Clark, supra.*

The appellants' second contention is that there was an acquiescence in the establishment of the boundary line by the driving of stakes in a 1946 survey. The evidence is conflicting on this issue. There is sufficient testimony to support the trial court's finding that the area south of the northerly 75-foot paved strip of the disputed area was wild and overgrown, and that the respondents were not aware of the existence of the stakes, nor was there any use of the property recognizing the stakes as the correct boundary.

The appellants finally contend that the adverse use of the disputed strip extended southerly beyond the 75 feet for the entire distance of the strip claimed or, in any event, extended more than 75 feet. The testimony on this issue is

also in conflict and there is sufficient evidence to support the trial court's finding contrary to this contention.

The judgment of the trial court is affirmed in so far as consistent with this opinion, but is otherwise reversed; and the cause is remanded.

It is evident that the location of Peach avenue in accordance with plat measurements and the apportionment of the land on the ground to fit the plat as established therefrom is a technical problem. The trial court is therefore instructed to take the testimony as may be required in establishing the common boundary of lots 18 and 19, in the manner as specified in this opinion, or, in the alternative, in the discretion of the trial court, to appoint a commission to make this determination, as provided in RCW 58.04.030, consistent with our holding herein. The appellants will be allowed their costs in this appeal. It is so ordered.

WEAVER, C. J., MALLERY, DONWORTH, FINLEY, and ROSELLINI, JJ., concur.

OTT, J., concurs in the result.

HILL and FOSTER, JJ. (dissenting) — We would affirm the trial court.