IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEFF and GWEN RUSSELL, husband and wife; JOHN and BARB CHILDS, husband and wife; SUE ELLEN BLACKNALL, an individual; CHERYL REESE, an individual; WALLY and MARTHA WEBSTER, husband and wife; BRIAN and AMY FARIS, husband and wife; LOREE LEE, an individual; and MICHAEL and GINA BALL, husband and wife, | No. 86266-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |
| Appellants/Cross-Respondents, | |
| v. | |
| THE CITY OF LYNNWOOD, an unchartered code city and a municipal corporation of Washington State, by and through its city council, | |
| Respondent/Cross-Appellant, | |
| SNOHOMISH COUNTY, a political subdivision of Washington State; and RONALD NEWMAN, | |
| Defendants. | |

SMITH, J. — In 2020, Ronald Newman applied for a short plat in

Snohomish County. Newman also owned a 1-foot strip of land—the "Nuisance

Strip"—near his property. Appellants (collectively referred to as Russell) owned

neighboring properties and objected to Newman's application. They appealed to

the City of Lynnwood's hearing examiner, who upheld the approval of the application, subject to conveyance of the Nuisance Strip to the City of Lynnwood. Russell then filed a Land Use Petition Act[1] (LUPA) action in superior court, which was dismissed.

In 2022, Russell sued Snohomish County and the City for declaratory relief and damages regarding the Nuisance Strip. After a bench trial, the court dismissed the action and later denied reconsideration. In a post-trial motion for sanctions based on a discovery violation, the court awarded fees to Russell. Russell appealed the dismissal of the action contending (1) the trial court's findings of fact were not supported by substantial evidence, (2) the trial court's conclusions of law were not supported by the findings of fact, (3) the court erred when it did not consider extrinsic evidence, (4) the trial court erred because it did not define the purpose of the nuisance strip, (5) Russell was required to meet a higher burden of proof than necessary, (6) the trial court erred when it determined the City's discovery violation was not willful, and (7) the trial court erred when it dismissed the claim. The City also appealed and claimed the trial court erred when it concluded Russell's claim was not time barred, and the court abused its discretion when it awarded fees to Russell based on the City's discovery violation.

We affirm on all issues, except we conclude the trial court abused its discretion when it awarded attorney fees to Russell because it failed to provide findings concerning the basis of its determination for the award. Therefore, we

---

[1] Chapter 36.70C RCW.

remand with instructions for the trial court to provide findings in support of the award of attorney fees and to correct a scrivener's error in the findings of fact.

FACTS

Background

In August 1978, H and H Homes, Inc (H&H) recorded a plat ("H&H Plat" or "Plat")[2] in the City of Lynnwood. The plat map included "Tract A," which had the following notation: "1' WIDE NUISANCE STRIP TO BE DEEDED TO THE CITY." The H&H Plat also noted, "No Parking on Right of Way until remaining Right of Way is built." In the "Dedication" section of the Plat, it stated, "Nuisance Strip (1') One foot shall be deeded to the City of Lynnwood." (Emphasis omitted.) A copy of the Plat map involved in this appeal is provided below.



_____

[2] The description of the Plat was, "This plat of WOODLAND ESTATES NO. 3 embraces the West 153.8 feet of the East 307.6 feet of Tract 110, in the Plat of Meadowdale Beach."

The City Planning Commission recommended the City Council grant preliminary approval of the H&H Plat under the condition that "[a] one foot wide nuisance strip be provided along the west side of the proposed right-of-way with a barricade acceptable to the city engineer installed along the entire length of the strip. The strip is to be shown on the plat as a separate parcel, and a deed given to the City." On August 14, 1978, the City Council moved to approve the final H&H Plat "subject to a one-foot nuisance strip being dedicated to the City." A deed conveying the Nuisance Strip to the City was executed on August 15, 1978, but the deed was never recorded.

Likely because the deed was never recorded, the Nuisance Strip remained in the name of H&H on the rolls of the Snohomish County Assessor, and real property taxes continued to accrue. In 1992, Snohomish County commenced a lien foreclosure against the Nuisance Strip for unpaid taxes. A judgment was entered in favor of Snohomish County and in a subsequent public sale in January 1993, the Nuisance Strip was conveyed to Snohomish County. In 2020, Snohomish County offered the City the opportunity to purchase the Nuisance Strip, but they declined, seemingly unaware they already were in possession of the 1978 deed. The County then sold the Nuisance Strip to Ronald Newman, who owned property to the east of 63rd Ave West, within the H&H Plat.

In 2020, Newman applied to subdivide property he owned within the H&H Plat. The City's Department of Developing and Building Services granted preliminary approval of the Newman Short Plat. Jeff and Gwen Russell, who

4

owned property adjacent to the Newman Short Plat, opposed the Newman Short Plat, contending the proposed access to the Newman Short Plat could not be used because the Nuisance Strip belonged to Newman, not the City.

The City approved the Newman Short Plat application, and Russell appealed to the City's hearing examiner in January 2021. The hearing examiner upheld the City's approval of the Newman Short Plat on the condition that "prior to the approval of the engineering plans for the development by the City, the 1' strip shall have been deeded and accepted by the City of Lynnwood." Russell subsequently initiated a LUPA petition appealing the hearing examiner's decision. Russell requested the court determine title and legal rights between the parties as related to the Nuisance Strip. The action was dismissed with prejudice. Russell appealed, and that action was also dismissed.

In March 2022, Russell initiated a lawsuit against the City challenging the approval of the Newman Short Plat's proposed access over 63rd Ave West. In September 2022, Newman executed a quit claim deed and conveyed the Nuisance Strip to the City, satisfying the hearing examiner's conditions of approval. The deed contained no restrictive covenants. The court held that, while the LUPA actions could not be relitigated, a genuine issue still remained as to whether the original developer had dedicated the Nuisance Strip for a particular purpose. At the time of trial, the City owned the Nuisance Strip.

<u>Trial</u>

At trial, six witnesses presented testimony: Wallace Webster, a plaintiff; Ashley Winchell, the City's former community planning manager; Arnold Kay, the

5

City's former public works supervisor; Karl Almgren, the City's community planning manager; Kirk Rappe, the City's former planner; and neighbor Katherine Davis. Exhibits admitted included City Council minutes and Planning Commission meeting minutes concerning the approval of the H&H Plat, e-mails between former City officials regarding the Nuisance Strip, the 1979 and 2022 deeds, and the H&H Plat, including the subdivision map.

Davis, who owned property to the west of 63rd Ave West, testified that, when applying for building permits, the City told her that neither she nor the residents from Woodland Estates were allowed to cross the Nuisance Strip, which the City called a "dead zone." Webster, who owned property in Woodland Estates, testified that when he purchased the property in 1979, a fence ran along 63rd Ave West and separated the street from the properties to the west. When Webster reached out to the City to get permission to move his mailbox onto the 1-foot strip between 63rd Ave and the fence (because the mailbox was protruding into the street), the City informed him he could not move the mailbox onto the strip because it was city property. Webster believed the 1-foot strip was owned and held by the City as a Nuisance Strip.

At trial, Russell admitted a 2020 e-mail between Rappe and Kay. In response to a question concerning the purpose of the "1-foot strip on the west side of 63rd Ave W," Kay stated:

> [T]he Woodland Estates created this spite strip when 63rd Ave was built. The intent of the strip was to prevent the property to the west (Newman) from accessing 63rd Ave because they would need the permission of the city. The hope was that the city would honor that request, but I don't think there was an official agreement that was

6

documented.  The strip was dedicated to the city but the dedication language on the plat says "to be deeded to the city."  It is supposed to say "deeded to the city upon recording of the plat."  Hence, the strip was never dedicated to the city.

When asked about the e-mail at trial, Kay testified he did not recall writing it. When asked if he was familiar with the term "nuisance strip," Kay said he had seen it on old plats and his understanding was that "it's a strip of land that was set aside to not allow access across that strip of land from one property or right-of-way to another."  When questioned further, Kay stated, "If there's any other question about it, I leave it up to the attorneys."

Almgren was also asked about his understanding of a nuisance strip. Almgren said his definition of a nuisance strip is "a strip of land that's usually vegetative between an easement or other matters."  Almgren noted that "nuisance strip" is not defined by the Lynnwood Municipal Code and is an older term that has since been replaced with other phrases.

After two days of trial, the court ruled in favor of the City.  The trial court held, (1) Russell had no legal right to the Nuisance Strip, (2) the City's decision to allow access to the Newman Short Plat over the Nuisance Strip was appropriate, (3) the case was not barred by res judicata, and (4) Russell's claim under the UDJA was appropriate, but they failed to demonstrate any damages.  Russell moved for reconsideration, which the trial court denied.  Russell appeal.

<u>Discovery Dispute</u>

In December 2022, before trial, Russell served the City with discovery requests.  Karl Almgren searched records on behalf of the City.  He searched microfilm and utilized the City's electronic file storage, ApplicationExtender (AX).

7

By February 2023, Almgren believed his search was "comprehensive and thorough and [the City] had produced all relevant/responsive documents." In April 2023, Donna Johnson, the City's senior records specialist, discovered new documents related to the case in a Public Works box stored in the Public Works Department records. She noted this was unusual because plat documents were typically Planning Department records. Hillary Evans, attorney for the City, noted the documents had been misfiled, but she provided them to Russell as soon as they were discovered.

Russell moved to sanction the City for the discovery violation, seeking relief in the form of $100,000 and/or a default judgment against the City. The trial court denied Russell's request to strike pleadings, sanction the City, or enter a default judgment. Instead, the trial court granted a short trial continuance. The trial court found the City's late production was not willful or intentional, but it did prejudice Russell's ability to prepare for trial.

After trial, Russell requested attorney fees based on the City's discovery violation. The court noted in its order that the City's violation was not willful, but Russell still incurred additional attorney fees because of the violation. The court concluded Russell was entitled to reasonable expenses associated with time spent reviewing the additional documents and filing related motions resulting in the court granting a continuance.

Russell requested $32,191.97 in fees. The court noted this request went "well beyond the Court's expectation of a request for reasonable expenses attributable to discovery." The court concluded, without explanation, that it was

8

reasonable for the Russell's attorney to spend 42.7 hours drafting and arguing the motion and preparing a proposed order. Based on a reasonable fee of $395.00, the court determined $16,866.50 was an appropriate award. The court reduced the amount by $2,588.88—the amount awarded to the City per RCW 7.24.100. The City appeals.

ANALYSIS

Findings of Fact and Conclusions of Law

Russell contends findings of fact 2, 11, 15, and 17 are not supported by substantial evidence. We determine a scrivener's error exists in finding of fact 2, which is harmless error, but otherwise the findings of fact are supported by substantial evidence.

We review the trial court's findings of fact for substantial evidence. " 'Substantial evidence exists if, when viewing the evidence in the light most favorable to the prevailing party, a rational trier of fact could find the fact more likely than not to be true.' " *In re Dependency of A.C.*, 1 Wn.3d 186, 194-95, 525 P.3d 177 (2023) (emphasis omitted) (quoting *In re Welfare of X.T.*, 174 Wn. App. 733, 737, 300 P.3d 824 (2013)). If this standard is met, we will affirm the finding; we do not substitute our judgment for that of the trial court. *A.C.*, 1 Wn.3d at 194. A party " 'must present argument to the court why specific findings of fact are not supported by the evidence and must cite to the record to support that argument' or they become verities on appeal." *Buck Mountain Owners' Ass'n v. Prestwich*, 174 Wn. App. 702, 714, 308 P.3d 644 (2013) (quoting *Inland Foundry Co. v. Dep't of La. & Indus.*, 106 Wn. App. 333, 340, 24 P.3d 424 (2001)).

When a determination is made through legal reasoning from facts in evidence, it is a conclusion of law. *In re Dependency of W.W.S.*, 14 Wn. App. 2d 342, 362, 469 P.3d 1190 (2020). Conclusions of law, and conclusions of law mislabeled as findings of fact, are reviewed de novo. *Buck Mountain*, 174 Wn. App. at 714.

1. Finding of Fact 2

Finding of fact 2 states, "A deed dated August 15, 1979, was executed by H&H, conveying the Nuisance Strip to the City ('1979 deed'); however, this conveyance was never recorded." Russell correctly points out the finding misstates the date of the deed. The actual date of the deed is 1978, not 1979. Russell contends this is reversable error because "it is unknown to what extent this incorrect finding was material to the trial court's reasoning and conclusion." But this is clearly a scrivener's error. In all other references to the conveyance of the deed, the court correctly listed the date as 1978. And, even if the court did believe the deed was executed in 1979, this would not affect the court's intended findings or decision, or affect Russell's substantial rights. Therefore, we find it is harmless error not requiring reversal, but we remand with instructions for the court to correct the scrivener's error.

2. Finding of Fact 11

Finding of fact 11 states,

The City's Hearing Examiner noted two references to the Nuisance Strip in the 'H&H Short Plat.' " These noted references were in the Dedication paragraph of the document where it is written in italics that *Nuisance Strip (1') One foot shall be deeded to the City of Lynnwood* and on the Replat map on the second page of the ('H&H

> Short Plat') document under Notes where it is written again in italics, *Nuisance Strip (1') One foot shall be deeded to the City of Lynnwood.* The Nuisance Strip is also referenced in the 'H&H' Short Plat' map under the words TRACT-A where in Italics it is written, *1' WIDE NUISANCE STRIP TO BE DEEDED TO THE CITY.* . . . This repeated reference does not indicate a purpose or intended use for the Nuisance Strip at issue.

Russell contends the last sentence ("This repeated reference…") of the court's finding is a conclusion of law that construes the plat's language. But this sentence is a literal reading of the plain language of the plat document and map, where no references are made to the purpose or intended use of the Nuisance Strip. The court was not contending the Nuisance Strip did not have a purpose or intended use, it was merely noting any purpose or intended use was not set forth in the text of the documents.

### 3. Finding of Fact 15

Finding of fact 15 states,

> On September 21, 2022, Newman executed a deed conveying the Nuisance Strip to the City of Lynnwood. The City executed the deed on October 2, 2022, and the deed was recorded with the Snohomish County Assessor on October 13, 2022, satisfying the Hearing Examiner's conditions of approval ("2022 deed"). . . . The deed included no restrictive covenants. At the time of trial, the City owned the Nuisance Strip.

The only portion of finding of fact 15 that Russell appears to take issue with is the sentence stating, "The deed included no restrictive covenants." But, similar to finding of fact 11, the court was merely concluding no restrictive covenants are conveyed in the plain language of the deed. Because, on its face, the 2022 deed does not include a

11

restrictive covenant, the trial court's finding was supported by substantial evidence.

### 4. Finding of Fact 17

Finding of fact 17 states, "Petitioners have failed to demonstrate with documents or testimony provided any legal entitlement to the Nuisance Strip, including easements or other restrictions." By determining the petitioners did not demonstrate a legal entitlement, the court used legal reasoning it applied to the facts, which is a conclusion of law, not a finding of fact. But the issue of legal entitlement to the Nuisance Strip is properly presented as a conclusion of law as well in conclusion of law 3, and the findings of fact which support it are supported by substantial evidence contained in the record, as explained below.

### 5. Conclusion of Law 3(d), (e), (f)

Conclusion of law 3 states, "Petitioners have no legal right to the Nuisance Strip." Subsections (d), (e), and (f) are as follows:

(d) Here, Petitioners rely on the "H&H Short Plat" map to support the allegation that they have a legal right to the Nuisance Strip. The plain language of the plat map requires the developer to "deed" the Nuisance Strip to the City. No easement or rights were granted to Petitioners or their predecessors as to the Nuisance Strip in the "H&H Short Plat."

(e) The deeds which conveyed the Nuisance Strip to the City—both the 1978 deed and the 2022 deed—do not contain restrictive covenants benefitting Petitioners.

(f) The term "Nuisance Strip" as used in plat documents is not binding, determinative, or limiting upon the City's use of the Nuisance Strip. The term does not impute any intention of the conveyance, but rather refers to the tract or strip itself as displayed on the map page of the ["]H&H Short Plat."

Russell contends the court's interpretation of the Plat's language was not reasonable. Russell maintains "Nuisance Strip" defines the purpose of Tract A and thereby limits the City's use of Tract A to that purpose—as a restrictive covenant or easement.[3]

When interpreting maps and plats, "the platter's intention is gathered from the plat itself." *Gwinn v. Cleaver*, 56 Wn.2d 612, 615, 354 P.2d 913 (1960). Plats should be interpreted as a whole, considering both lines and words. *Ditty v. Freeman*, 55 Wn.2d 306, 309, 347 P.2d 870 (1959). Every part of the instrument should be given effect and " 'no part of the plats are to be rejected as meaningless, if it can be avoided.' " *Ditty*, 55 Wn.2d at 309 (internal quotations marks omitted) (quoting *Mueller v. City of Seattle*, 167 Wash. 67, 73, 8 P.2d 994 (1932)). Generally, restrictions in an instrument "will not be extended by implication to include any use not clearly expressed" and "[d]oubts must be resolved in favor of the free use of land." *Burton v. Douglas County*, 65 Wn.2d 619, 622, 399 P.2d 68 (1965).

Here, Russell claims the map itself and rules of construction support a reading that Tract A was intended to be dedicated and used as a Nuisance Strip.[4] First, Russell contends that because the map uses a heavy black line to

---

[3] At different points in their brief, Russell implies the Nuisance Strip is both an easement and a restrictive covenant.

[4] Russell never explicitly defines "nuisance strip," but cites to Arnold Kay's testimony, where Kay likens a nuisance strip to a spite strip. Neither "nuisance strip" or "spite strip" appear in Washington cases, but "spite strip" has been defined by other jurisdictions as an "artificial strip[] of land created to frustrate a neighboring landowner's land use right." *Austin Bank of Chicago v. Village of Barrington Hills*, 396 Ill. App. 3d 1, 3, 919 N.E. 2d 88 (2009).

depict the edge of the plat property and a narrow line to depict the road right-of-way, the strip was not intended to be part of the road right-of-way. This point is not contested by the City.

Next, Russell maintains the plain language of the H&H Plat and map indicate Tract A was meant to be used as a nuisance strip. Russell states "Tract A" is the legal description of the strip and "Nuisance Strip (1'), One foot shall be deeded to the City of Lynnwood" is the purpose. Russell contends reading "Nuisance Strip" as an identifier, similar to "Tract A," would be redundant and, therefore "Nuisance Strip" must be its intended use.

But, even if "Nuisance Strip" was the intended use of Tract A, Russell has not shown how a nuisance strip creates an easement or restriction on the City's use of the strip. To support their contention, Russell cites to e-mails from former City officials discussing Tract A. In one e-mail from Arnold Kay, former department services supervisor, to Kirk Rappe, former city planner, Kay states,

> [T]he Woodland Estates created this spite strip when 63rd Ave was built. The intent of the strip was to prevent the property to the west (Newman) from accessing 63rd Ave because they would need the permission of the city. The hope was that the city would honor that request, but I don't think there was an official agreement that was documented.

At trial, Kay testified his understanding of a nuisance strip is "a strip of land that was set aside to not allow access across that strip of land from one property or right-of-way to another." But Kay went on to say, "[T]hat's as far as I have ever taken it. If there's any other questions about it, I leave it up to the attorneys."

14

In another e-mail from Ashley Winchell to Rappe discussing the Nuisance Strip, Winchell states, "That makes the nuisance strip make more sense. They didn't want the existing lots to connect to the street." At trial, Winchell testified she knew the e-mail existed, but did not remember any conversation about the Nuisance Strip.

Regardless, neither Winchell's or Kay's testimony provide any evidence beyond conjecture that the Nuisance Strip was deeded to the city to be held for the benefit of the plat owners. Furthermore, another City official, Karl Almgren, testified that, had the intent of the Nuisance Strip been to ensure people from the west could not access 63rd Ave West, then "ownership of the nuisance strip should have stayed with the west." Almgren noted it was not common for a city to receive property that benefits private residences.

Without other evidence or legal support, contradicting testimony from current city officials is not enough to support a claim that the term "Nuisance Strip" as used in the original deed was anything more than a reference to the strip of land deeded to the City. Therefore, the court's conclusion that the term "Nuisance Strip" did not impute any intention of the conveyance was supported by substantial evidence.

6. Conclusion of Law 6(a) and (b)

Russell contends conclusions of law 6(a) and (b) are erroneous because the H&H Plat did not convey an unrestricted fee simple interest in Tract A, but instead dedicated Tract A as a nuisance strip. The City maintains the plain

language of the Plat clearly deeds the Nuisance Strip to the City. We agree with the City.

According to Black's Law Dictionary, a "dedication" is "[t]he donation of land or creation of an easement for public use." *Black's Law Dictionary* 518 (12th ed. 2024). A "deed" is "[a] written instrument by which land is conveyed." *Black's Law Dictionary* 520 (12th ed. 2024). "When an individual seeks to dedicate a fee interest, 'that intent should be clearly stated and the use should be unrestricted or, if the use is a condition, the condition should be clearly stated with a specific right of reversion.' " *Kiely v. Graves*, 173 Wn.2d 926, 933-34, 271 P.3d 226 (2012) (quoting 6 Washington State Bar Association, *Washington Real Property Deskbook* § 91.9(1) (3d ed. 2001)); *see also Karb v. City of Bellingham*, 61 Wn.2d 214, 218, 377 P.2d 984 (1963) (stating a required element of a dedication is there be "an unequivocal act by the fee owner establishing his intention to dedicate"). When attempting to extinguish or alter an easement established by dedication, there must be approval of the easement owner(s). RCW 64.04.175.

Here, conclusion of law 6 states, "Respondent City of Lynnwood properly allowed access over the Nuisance Strip." Subsections (a) and (b) are as follows:

a. The municipalities have absolute power over their property, rights-of-way and streets therein limited only by the constitution.

b. Because the City is the undisputed owner of the Nuisance Strip, and Petitioners demonstrated no dedicated limitation on use of the Nuisance Strip, actions taken by the City in approving the Newman Short Plat were appropriately taken.

(Citation omitted.)

16

Russell contends the trial court improperly concluded a fee simple interest in the Nuisance Strip was deeded to the City and, accordingly, its decision improperly extinguished an anti-access easement (the Nuisance Strip). But Russell's argument rests on the contention that the Nuisance Strip was dedicated to the City. The Plat and Deeds make clear that the Nuisance Strip was deeded to the City, not dedicated. The plain language of the Plat and deeds indicate the Nuisance Strip was to be "deeded" to the City. The only reference to "dedication" in the Plat is that the language "*Nuisance Strip (1') One foot shall be deeded to the City of Lynnwood*" is written under the "Dedication" section of the 1978 deed.

Furthermore, had the Nuisance Strip been intended as a dedication, the grantor would have used the word "dedication." In that same section, the language states, "[W]e . . . hereby declare this plat and dedicate to the public forever, all roads and ways shown hereon." By using both the words "dedication" and "deed," we must assume the grantor understood the definition of each word. As Russell notes in their brief, "the objective manifestation of intent should 'be determined from the words actually used and, ordinarily those words are given their ordinary, usual, and popular meaning.' "[5] (Emphasis omitted.)

Even without resorting to interpreting the grantor's intent, the plain language of the Plat and deeds do not convey anything other than a deeded

---

[5] Russell does not provide authority for this citation, but this is a popular concept of contract interpretation cited by courts. *See e.g.*, *Hulbert v. Port of Everett*, 159 Wn. App. 389, 245 P.3d 779 (2011) ("Courts 'impute an intention corresponding to the reasonable meaning of the words used,' and words are given their ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates otherwise." (quoting *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005)).

interest to the City. Unless clearly expressed, restrictions will not be "extended by implication." *Burton*, 65 Wn.2d at 622. Neither the Plat nor the1978 or 2022 deed contain any restrictive covenants or limitations on the use of the Nuisance Strip.

Because the clear language of the Plat and deeds do not evidence a dedication, the trial court's conclusion of law 6 is supported by the findings of fact and substantial evidence. Therefore, the trial court's decision did not improperly vacate an easement created by dedication.

The trial court's findings of fact and conclusions of law are supported by substantial evidence; however, we remand with instructions to correct the scrivener's error in finding of fact 2.

Extrinsic Evidence

Russell contends the trial court erred when it did not consider extrinsic evidence to determine the intent of the Nuisance Strip. The City claims extrinsic evidence was not necessary because the deeds and Plat were not ambiguous, but, nonetheless, the court did admit and consider extrinsic evidence. Because the court did consider extrinsic evidence, no error occurred.

When a plat is ambiguous, "surrounding circumstances and even extrinsic evidence may be considered for the purpose of determining the real intention of the plattor [sic]." *Tsubota v. Gunkel*, 58 Wn.2d 586, 589-90, 364 P.2d 549 (1961). A plat is ambiguous if the terms in the written instrument "are uncertain or capable of being understood as having more than one meaning." *M.K.K.I, Inc. v. Krueger*, 135 Wn. App. 647, 654, 145 P.3d 411 (2006). While extrinsic

evidence can be used to shed light on what is written, it should not be used to deduce what was intended to be written. *Wilkinson v. Chiwawa Comty. Ass'n*, 180 Wn.2d 241, 251, 327 P.3d 614 (2014).

Even when the words of a document appear clear and unambiguous, extrinsic evidence may be allowed to discern the meaning or intent of the words. *Hollis v. Garwall, Inc.* 137 Wn.2d 683, 693, 974 P.2d 836 (1999). This rule is called the "context rule" and has been applied when interpreting contracts and restrictive covenants. *See Miller v. Kenny*, 180 Wn. App 772, 789, 325 P.3d 278 (2014) (contracts); *Hollis*, 137 Wn.2d at 696 (restrictive covenants). But, even when the context rule is applicable, "extrinsic evidence that 'would show an intention independent of the instrument' or 'would vary, contradict or modify the written word' " is not admissible. *Miller*, 180 Wn. App. at793 (quoting *Hollis*, 137 Wn.2d at 695).

Here, Russell contends numerous times the Plat and deed are unambiguous, yet also insists extrinsic evidence should have been admitted. Russell lists nine specific pieces of evidence the court "should have, but did not, consider,"[6] but every item Russell cites to was included as an exhibit at trial,

---

[6] "(1) [T]he City engineer's August 20, 1976, memo to the Planning Director; (2) the July 1976 Planning Commission Meeting Minutes; (3) the August 1976 City Council Meeting Minutes; (4) the 1978 City Council Meeting Minutes; (5) Wallace Webster, II's and Kathy Davis's respective testimonies regarding the City's subsequent conduct regarding Tract A; (6) The City Executive's 1995 comments regarding Tract A's purpose when Kathy Davis subdivided her property; (7) Arnold Kay's e-mail to Kirk Rappe regarding Tract A being a nuisance or "spite" strip and its intended use; (8) Ashley Winchell's testimony regarding her expressed understanding of the purpose for which Tract A was conveyed to the City; and (9) the October 2022 deed from the current developer to the City."

which the court considered.  In its findings and conclusions, the court stated it "considered all testimony and documentary evidence admitted."  The court also opined that, while "[i]t is unnecessary to consider evidence outside the plat document and deeds at issue . . . extrinsic evidence presented at trial was insufficient to determine the intent of the city of Lynnwood and owners of surrounding parcels in the 1970s to support a restriction on the City's use of the Nuisance Strip, which it now owns in fee simple."

Because the court did consider extrinsic evidence, we conclude the trial court did not err.

Purpose of "Nuisance Strip"

Russell contends the trial court erred because it never determined the purpose of the term "Nuisance Strip."  Because the court addressed the purpose of the Nuisance Strip in its findings and conclusions, we conclude no error occurred.

Though Russell makes the claim that the trial court never determined the purpose of the nuisance strip, they note in the same paragraph that "the trial court used 'Nuisance Strip' as a defined term that described the real property conveyed."  The court determined the term "Nuisance Strip" imputed no intention of conveyance and simply referred to the strip itself.  This determination was supported by substantial evidence in the record (see conclusion of law 3).  Because the trial court properly addressed the purpose of the term "Nuisance Strip," it did not err.

## Burden of Proof

Russell contends they should not have been required to prove the developer intended to impose a restrictive covenant on Tract A because the developer clearly conveyed the Nuisance Strip as a non-access easement. Russell's argument is not entirely clear, but presumably they are contending they should not have been required to prove intent of the developer because Tract A was clearly conveyed as a non-access easement. This entire argument rests on the assumption that it was clear from the Plat language Tract A was dedicated to the city for a particular purpose. Because the findings, which are supported by substantial evidence, do not support this conclusion, Russell's contention that they were required to meet a higher burden of proof is moot.

## Discovery Violation

Russell contends the trial court erred when it concluded the City's discovery violation was neither intentional nor willful. Because multiple witnesses testified the responsive documents were misfiled, and the City produced them once they were discovered, the trial court did not err in concluding the violation was not intentional.

We review a trial court's discovery sanctions for abuse of discretion. *Magana v. Hyundai Motor America*, 167 Wn.2d 570, 582, 220 P.3d 191 (2009). " 'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.' " *J.K. v. Bellevue School Dist. No. 405*, 20 Wn. App. 2d 291, 303, 500 P.3d 138 (2021) (quoting *Cook v. Tarbert Logging, Inc.*, 190 Wn. App. 448, 461, 360 P.3d 855 (2015).

Here, Russell contends the City's violation was willful because the City produced responsive documents from only one of its departments (Planning Department), they did not request other departments, such as the Public Works Department, to search their records, and the they did not maintain a reliable documentation management and retrieval system. Russell cites to *Magana*, 167 Wn.2d 570, to support this contention, but that case is distinguishable.

In *Magana*, the court sanctioned Hyundai for failing to maintain an adequate document retrieval system, refusing to search beyond their legal department, and failing to supplement incorrect responses when it learned additional information. *Id.* at 586-87. The court noted, "A corporation must search all of its departments, not just its legal department, when a party requests information about other claims during discovery." *Id.* at 585. It also stated that because "Hyundai is a sophisticated multinational corporation, experienced in litigation," it was required to maintain a responsive document retrieval system. *Id.* at 586.

Here, Almgren, who searched for discovery materials on behalf of the City, stated he did not search departments other than the Planning Department for responsive documents because he "was unaware and could not have predicted that these records would have been kept as 'Public Works' records." Donna Johnson, who ultimately found the 1978 Plat, noted she was surprised to find plat records saved as Public Works records because plat documents are typically Planning Department records. It was only after she inadvertently found the Plat that she learned plats were historically saved with Public Works. Johnson stated

22

she did not believe the City's initial discovery response was faulty or flawed, because normally one would not search outside the department that created the records.

Additionally, while both Johnson and Almgren admitted the AX system sometimes used to search records was clunky, it was not the only method they employed. Both Johnson and Almgren performed manual searches for information related to the Woodland Plat. Furthermore, the City of Lynnwood is far from a "sophisticated multinational corporation experienced in litigation" that should be expected to have a state-of-the-art document retrieval system.

Because the City made ample effort to locate documents in response to Russell's discovery request and promptly provided the newly discovered materials, we conclude the trial court did not abuse its discretion when it found the City's discovery violation to be neither intentional nor willful.

<u>Uniform Declaratory Judgment Act</u>

Russell alleges the trial court erred when it dismissed the Uniform Declaratory Judgment Act, chapter 7.24 RCW, (UDJA) claim after determining Russell had properly asserted a claim for declaratory relief. The City maintains the UDJA claim was properly dismissed because Russell did not demonstrate legal entitlement to the Nuisance Strip. Because Russell does not properly brief the issue, we decline to address it on appeal.

Under RAP 10.3, the brief of a petitioner must include "argument in support of the issues presented for review" as well as "citations to legal authority and references to relevant parts of the record." This court may decline to

23

consider an appeal that does not provide "adequate, cogent argument and briefing." *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 808, 225 P.3d 213 (2009).

Here, Russell's briefing on the trial court's dismissal of the UDJA claim does not contain any citations to legal authority or the record. Because Russell does not properly brief this issue, we decline to address it on appeal.

Res Judicata

In its response brief, the City alleges the trial court erred when it determined Russell's claim was not barred by res judicata. Russell addresses this issue in their reply, contending their claim is not barred by res judicata because the present action addresses intent, which was not considered by the UDJA action. Because the City raises this issue in their response, it is not properly before this court for review.

For an appellate court to grant a respondent affirmative relief, the respondent must file a timely notice of appeal or a notice of discretionary review, or relief may be granted if "demanded by the necessities of the case." RAP 2.4(a).

Here, the City raises res judicata for the first time in their response, not in their cross-appeal. Because a failure to cross-appeal generally precludes review on appeal, *Amalgamated Transit Union Local 587 v. State*, 142 Wn. 2d 183, 202, 11 P.3d 762 (2000), we decline to address the issue.

Attorney Fees

In its cross-appeal, the City contends the trial court abused its discretion when it awarded Russell attorney fees based on the City's discovery violation. Russell claims the amount awarded was reasonable. We agree with the City that the trial court abused its discretion when it failed to include findings to support its award of fees.

We apply a two-part analysis when reviewing a trial court's decision to award attorney fees. First, "we review de novo whether there is a legal basis for awarding attorney fees by statute." *Falcon Props. LLC v. Bowfits 1308 LLC*, 16 Wn. App. 2d 1, 11, 478 P.3d 134 (2020). Then, we review the decision to award or deny fees and the reasonableness of the award for abuse of discretion. *Falcon Props.*, 16 Wn. App. 2d at 11. A court abuses its discretion when its decision is " 'manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons.' " *SentinelC3, Inc. v Hunt*, 181 Wn.2d 127, 144, 331 P.3d 40 (2014) (quoting *Humphrey Indus., Ltd. v. Clay Street Assocs.*, 170 Wn.2d 495, 506, 242 P.3d 846 (2010).

Courts typically utilize the lodestar method in calculating fees. *Mahler v. Szucs*, 135 Wn.2d 398, 433-34, 957 P.2d 398 (1998). Under this analysis, the court first determines the reasonable amount of hours counsel spent "securing a successful recovery for the client." *Mahler*, 135 Wn.2d at 434. This determination requires the court to "exclude from the requested hours any wasteful or duplicative hours and any hours pertaining to unsuccessful theories or claims." *Mahler*, 135 Wn.2d at 434. The court then calculates the

25

reasonableness of the attorney's hourly rate. *Mahler*, 135 Wn.2d at 434. Those two numbers (hours and fee) are multiplied to determine the appropriate award. *Mahler*, 135 Wn.2d at 434. When conducting this analysis, the trial court "must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the trial court awarded the amount in question." *SentinelC3*, 181 Wn.2d at 144.

Civil Rule (CR) 37 authorizes a court to impose sanctions when a party fails to respond to interrogatories and requests for production. CR 37(d); *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 324, 54 P.3d 665 (2002). "The purposes of sanctions orders are to deter, to punish, to compensate and to educate." *Wash. State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 356, 858 P.2d 1054 (1993). If a party's violation is neither intentional nor willful, this may be considered as a mitigating factor when imposing sanctions. *Fisons Corp.*, 122 Wn.2d at 356.

Here, the City contends the amount of the award was not supported by substantiated findings. The City claims Russell failed to provide invoices or concurrent billing statements for the hours claimed, and it is unclear how the court reached its determination that 42.7 hours was a reasonable amount of time for Russell's counsel to spend drafting and arguing the motion and preparing a proposed order. Russell contends the court critically evaluated the fee request, as evidenced by it reducing the amount requested. But, even if the court did critically evaluate the request, it was required to provide an explanation about its calculation.

26

In its order determining Russell was entitled to reasonable expenses, the court noted it "envision[ed] the request to be reasonably related to time spent reviewing the 313 pages provided on or about April 19, 2023 and the filing of the Motion to Strike Pleadings and Grant a Default that resulted in a continuance on May 5, 2023." After reviewing Russell's attorney, Dennis McGlothin's declaration and reply brief, the court determined Russell did not "sufficiently specify[] time spent in reviewing and addressing new information." But, the court found 42.7 hours was a reasonable amount of time to spend drafting and arguing the motion, and preparing a proposed order. Accordingly, the court granted fees based on 42.7 hours of work. While this calculation may be accurate, the trial court was required to provide findings of fact to support its award. Therefore, we remand to the court to do so.

We affirm, but remand with instructions to correct the scrivener's error and provide findings of fact in support of its award of attorney fees.

WE CONCUR: